**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

JOHN DOE,                               )
                                        )
        Plaintiff,                 )
                                        )
   v.                               )     Civil Action No. 1:06-CV-01645
                                        )     Judge Richard J. Leon
LOUIS WOLF, *et al.*,                   )
                                        )
        Defendants.                )
_____)

## DEFENDANTS' MOTION TO DISMISS

Defendants Louis Wolf and Covert Action Publications, Inc. ("Covert Action"), by and through undersigned counsel, respectfully submit their Motion to Dismiss Plaintiff's Complaint. As set forth in the attached memorandum of law, this Court must dismiss Plaintiff's Complaint because Plaintiff has failed to plead his allegations with requisite particularity, Fed. R. Civ. P. 7(b)(1), failed to state a claim upon which relief can be granted as a matter of law, Fed. R. Civ. P. 12(b)(6), and failed to satisfy subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1).

Plaintiff fails to state any claims based on his alleged employment contract with Defendants because he fails to plead facts sufficient to support any allegation that a contract existed between the parties, or that Defendants ever breached that contract.

Plaintiff fails to state any claims based on Covert Action's alleged promise to pay him for "past deferred salary" because he fails to plead facts sufficient to support any allegation that a contract was ever created, and because the statute of limitations bars his claim.

Plaintiff's claim alleging that Mr. Wolf breached the alleged surety agreement that he entered into with Plaintiff is barred by the statute of frauds because Plaintiff failed to plead the existence of a written contract.

Plaintiff's non-contractual claims, including breach of the covenant of good faith and fair dealing, intentional and negligent infliction of emotional distress, and conversion, must fail because Plaintiff's allegations, even when interpreted in the light most favorable to Plaintiff, still fail to state any claims upon which relief can be granted.

Even if this Court were to find that some of Plaintiff's contractual claims could survive a motion to dismiss for failure to state a claim, it must find that the maximum amount in controversy, $38,467, is well below the $75,000 requirement for diversity jurisdiction, so this Court would not have subject matter jurisdiction over Plaintiff's claims.

Accordingly, Defendants request that this Court dismiss all of Plaintiff's claims.

Respectfully submitted,

/s/ Lynne Bernabei

_____
Lynne Bernabei, Esquire    # 938936
Alan R. Kabat, Esquire    # 464258
The Bernabei Law Firm, PLLC
1775 T Street, N.W.
Washington, D.C.  20009-7124
tel. (202) 745-1942
fax (202) 745-2627

Counsel for Defendants

Dated: November 8, 2006

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:06-CV-01645 |
| | ) | Judge Richard J. Leon |
| LOUIS WOLF, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

_____)

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

Defendants Louis Wolf and Covert Action Publications, Inc. ("Covert Action"), by and through undersigned counsel, respectfully submit this Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Complaint. As set forth below, Plaintiff fails to plead sufficient facts to support his allegations, thereby failing to plead with particularity, Fed. R. Civ. P. 7(b)(1), and fails to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6). Further, Plaintiff's claims fail to satisfy subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), as the amount in controversy does not exceed $75,000, as required by 28 U.S.C. § 1332(a). Defendants respectfully request that this Court dismiss Plaintiff's claims with prejudice.

I.    **BACKGROUND.**

Mr. Wolf is a co-founder of Covert Action. Complaint ¶ 11. Covert Action is a non-profit corporation. Id. at ¶ 10. Covert Action hired Plaintiff to work as part of its editorial team. Id. at ¶ 6.

On September 19, 2006, Plaintiff filed a Complaint for Damages, alleging 16 individual counts against Defendants, and filed a Motion to Proceed in Pseudonym. This Court denied

Plaintiff's Motion to Proceed in Pseudonym on November 7, 2006, and ordered Plaintiff to file a Corrected Complaint setting forth his true name.

In his Complaint, Plaintiff seeks damages amounting to millions of dollars. Plaintiff alleges breach of contract, theft, intentional infliction of emotional distress, slander, and more. Yet, in reality, this action is an irresponsible, half-hearted attempt by a disgruntled former employee to make wild allegations with the hope of reaping undue pecuniary benefit. Plaintiff's Complaint is a sloppy mishmash of confused allegations and unsupported legal claims. Having read through the Complaint numerous times in an attempt to interpret Plaintiff's claims as accurately as possible, Defendants strongly believe that this criticism is an understatement and that Plaintiff presents no cause of action appropriate for consideration by this Court.

This lawsuit is essentially a reprise of a prior lawsuit in the D.C. Superior Court, which also sought recovery on behalf of Plaintiff Doe. In Heather Cottin v. Louis Wolf, et al., Civil Action No. 05 CA 004952 (D.C. Super. Ct.), plaintiff Cottin alleged that defendants, which included the two board members of Covert Action and their spouses, were liable for having "failed and refused to pay the editor his full salary and benefits, owed him for 15 years, despite numerous assertions and even a promissory note alleging that he would be paid in full." See Complaint, at ¶ 5 (June 24, 2005) (attached and incorporated hereto as Exhibit 1). The "editor" referenced is the same person who is the John Doe plaintiff in the proceeding before this Court. On behalf of this editor, Ms. Cottin sought a judgment against defendants "in the amount of $200,000.00 to cover unpaid salary, benefits, and taxes to the editor and webmaster." Id. at ¶ 12. The editor, represented by John M. Green, Esquire (who is also his counsel in this litigation), intervened by filing a "Motion to Exclude and/or Motion in Limine" which sought to prevent the

2

disclosure of his name, address, or any other information relating to his true identity.

Defendants filed an opposition to plaintiff's motion for preliminary injunction, and a motion to dismiss plaintiff's complaint. Ms. Cottin did not file any opposition to defendant's motion to dismiss. On July 25, 2005, Judge Wertheim, as the Judge-in-Chambers, denied Ms. Cottin's motion for a temporary restraining order, and admonished her counsel under Rule 11. On July 29, 2005, Judge Broderick denied Ms. Cottin's motion for a preliminary injunction, finding that she had little or no likelihood of succeeding on the merits. See Letter from L. Bernabei to J. Springmann (Aug. 2, 2005) (attached and incorporated hereto as Exhibit 2). Later that same day, Ms. Cottin dismissed her claims against defendants, including her claims based on amounts allegedly owed to the editor, who is the Plaintiff this case. See Praecipe (July 29, 2005) (attached and incorporated hereto as Exhibit 3).

## II.    LEGAL STANDARD.

This Court must dismiss a complaint, under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Although the factual allegations of the complaint must be taken as true, "the complaint must set forth sufficient information to suggest that there exists some recognized legal theory upon which relief can be granted" against the defendant. Wells v. United States, 851 F.2d 1471, 1473 (D.C. Cir. 1988); accord Dale v. Thomason, 962 F. Supp. 181, 183 (D.D.C. 1997) (granting Rule 12(b)(6) motion).

The D.C. Circuit has consistently held, in ruling on a 12(b)(6) motion to dismiss, that "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by

the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations." Mountain States Legal Found. v. Bush, 306 F.3d 1132, 1134-35 (D.C. Cir. 2002) (quoting Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)).[1] Thus, the "court must dismiss a complaint where, even assuming all the factual allegations are true, the plaintiff has failed to establish a right to relief based upon those facts." Gregg v. Barrett, 771 F.2d 539, 547 (D.C. Cir. 1985).  A plethora of conclusory allegations and unsupported inferences cannot rescue a Plaintiff's complaint.  Mountain States Legal Found. v. Bush, 306 F.3d 1132, 1134-35 (D.C. Cir. 2002).

Further, Rule 7(b)(1), Fed. R. Civ. P., requires a party filing a complaint to state the grounds supporting the complaint and the relief sought with "particularity." "The standard for particularity has been understood to mean 'reasonable specification.'" Allender v. Raytheon Aircraft Co., 439 F.3d 1236, 1240 (10th Cir. 2006) (quoting Martinez v. Trainor, 556 F.2d 818, 820 (7th Cir. 1977)).  Rule 7(b)(1) ensures that the opposing party has a "meaningful opportunity to respond" to the complaint, and that the court has "enough information to process the motion correctly." Merida v. Holiday Inn, Inc., Civ. A. No. 89-2262, 1993 WL 439791, at *3 (D.D.C. Oct. 19, 1993) (citing Registration Control Sys., Inc. v. Compusystems, Inc., 922 F.2d 805, 808 (Fed. Cir. 1990)).  If a party's failure to plead with particularity prejudices the opposing party's

---

[1] The D.C. Circuit recently emphasized that, even after the simplified notice pleading standard set forth in Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-13 (2002), the court must not accept unsupported inferences or conclusory allegations in a complaint.  Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002); see also Jankovic v. International Crisis Group, 429 F. Supp. 2d 165, 170 (D.D.C. 2006) (stating that a court should reject "inferences or conclusory allegations that are unsupported by the facts set forth in the complaint;" instead, "[o]nly the facts alleged in the complaint, documents attached as exhibits, and matters about which the Court may take judicial notice can be considered.").

case, or makes it impossible for the court to understand the basis, then the court should dismiss the party's motion. Id.

To establish jurisdiction in federal court, a plaintiff must either raise a federal question, 28 U.S.C. § 1331, or satisfy diversity jurisdiction. 28 U.S.C. § 1332(a). Since Plaintiff presents no federal questions in his allegations, the only basis for this Court's jurisdiction is diversity jurisdiction. To satisfy diversity jurisdiction, a plaintiff must demonstrate that "(1) complete diversity exists; and (2) the claim in good faith exceeds $75,000." Meng v. Schwartz, 305 F. Supp. 2d 49, 55 (D.D.C. 2004); see also Thomson v. Gaskill, 315 U.S. 442, 446 (1942) ("if a plaintiff's allegations of jurisdictional facts are challenged by the defendant, the plaintiff bears the burden of supporting the allegations by competent proof."). Hence, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938).

## III.    SUMMARY OF ARGUMENT.

This Court should dismiss all of Plaintiff's claims.

First, Plaintiff has failed to plead with particularity, Fed. R. Civ. P. 7(b)(1), and has demonstrated that, even when interpreting the facts in the light most favorable to his claims, he has pled no set of facts in support of his claims that would entitle him to relief. Fed. R. Civ. P. 12(b)(6); Conley, 355 U.S. at 45-46.

Second, Plaintiff's claims fail to meet the jurisdictional amount in controversy threshold of $75,000, as required by 28 U.S.C. § 1331(a), so that this Court lacks subject matter jurisdiction.

As explained below, Plaintiff's muddled Complaint fails to set forth any claims that

should even be before this Court.  When distilled down to his basic allegations, Plaintiff presents

six categories of overlapping claims.  Plaintiff claims:

(1)     Mr. Wolf and Covert Action allegedly owe him unpaid wages (Complaint Counts I-IX);

(2)     Covert Action allegedly promised to pay him a "debt for past deferred salary" (Complaint Counts II, IV, VI, IX);

(3)     Mr. Wolf allegedly promised to act as surety for that debt (Complaint Counts I, VII);

(4)     Covert Action allegedly stole his ideas and work (Complaint Count IX (sic));[2]

(5)     Covert Action allegedly defamed him (Complaint Counts XIII (sic)); and

(6)     Mr. Wolf and Covert Action allegedly caused him emotional distress (Complaint Counts XIV (sic), XIV (sic)).

Of these claims, none of which Defendants view as legitimate, Plaintiff's only claims that

arguably could state a cause of action are those for unpaid wages.  However, even Plaintiff's

wage claims should fail because Plaintiff pleads contradictory allegations regarding his income,

and seeks payment of wages well beyond the statutory period.  Further, Plaintiff's own

allegations arguably demonstrate that Plaintiff has been paid in full for the services he rendered

to Covert Action.  At most, Plaintiff pleads facts that Covert Action owes him as much as

$38,467 in unpaid wages, well short of the $75,000 amount in controversy requirement under 28

U.S.C. § 1332(a).  Plaintiff's remaining claims have no basis in law.

## IV.     PLAINTIFF'S CLAIMS MUST BE DISMISSED FOR FAILURE TO PLEAD WITH PARTICULARITY UNDER RULE 7(b)(1), Fed. R. Civ. P., AND FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6), Fed. R. Civ. P.

This Court should dismiss all of Plaintiff's claims.  Plaintiff has failed to plead with

particularity, Fed. R. Civ. P. 7(b)(1), and has demonstrated that he can prove no set of facts in

---

[2] Several of Plaintiff's counts are erroneously numbered.  For the convenience of this Court, Defendants have used the Plaintiff's numbering, with "sic" used to indicate the mis-numbered count.

support of his claims that would entitle him to relief. Fed. R. Civ. P. 12(b)(6); <u>Conley</u>, 355 U.S. at 45-46.

A.    **Counts I and II - Defendants' Breach of Expressed Contract.**

Plaintiff separately claims that Mr. Wolf (Count I) and Covert Action (Count II) breached an "expressed contract." This Court should dismiss Counts I and II because Plaintiff fails to allege the existence of a contract and therefore fails to state a claim as a matter of law. Even if this Court were to find that Plaintiff had sufficiently pled the existence of a contract, Plaintiff still fails to state a claim because (1) the statute of frauds bars Plaintiff's surety claim because he did not plead the existence of a written contract, D.C. Code § 28-3502, and (2) the three-year statute of limitations bars Plaintiff's claims arising prior to September 19, 2003, D.C. Code § 12-301(7).

Plaintiff fails to specify under what contract he brings this claim and fails to allege facts to support the existence of a contract with either Mr. Wolf or Covert Action. <u>See</u> Complaint ¶¶ 52, 75. Interpreting the Complaint in the light most favorable to Plaintiff, Defendants find that Plaintiff claims (1) that Mr. Wolf and Covert Action breached an alleged employment contract by not paying Plaintiff wages owed to him, <u>see id.</u> at ¶¶ 52, 69-75, (2) Covert Action breached an alleged agreement to pay Plaintiff a debt "for past deferred salary," <u>id.</u> at ¶ 66, and (3) Mr. Wolf breached an alleged agreement to act as surety for Covert Action's alleged promise to pay that debt. <u>Id.</u> at ¶¶ 33, 52.

(1)    Plaintiff's employment contract claims must fail because he fails to plead facts to support the existence or breach an employment contract, and the statute of limitations bars his claims.

First, Plaintiff's claim that Defendants breached an alleged employment contract should

fail because he does not plead the material terms to the contract.  Generally, a contract is valid and enforceable if (1) the parties agreed to all material terms; (2) the parties intended to be bound by the contract; and (3) the contract was supported by consideration.  See Sisco v. GSA Nat. Capital Fed. Credit Union, 689 A.2d 52, 56 (D.C. 1997); Sims v. Westminster Investing Corp., 648 A.2d 940, 942 (D.C. 1994).  Plaintiff fails to allege his obligations under the contract, and more importantly, he fails to allege the income that Defendants allegedly promised to pay him during most of the period to which he refers.  See Complaint ¶¶ 12-21 (failing to allege income until the year 2000).

Second, Plaintiff fails to allege that Defendants did not pay him for periods when he actually worked.  Id. at ¶ 52.  Assuming the parties had entered an employment agreement, if Plaintiff ceased working for Defendants, then presumably, absent some other agreement, Defendants would not owe Plaintiff wages for the period when Plaintiff did not work.  This Court should dismiss Plaintiff's contract claims for failure to allege that he worked during the periods when he claims that Defendants did not pay him.

Even if this Court finds that Plaintiff sufficiently pled facts to support the existence and breach of an employment contract, this Court should limit recovery to those wages that accrued during the statutory period – from September 19, 2003, through June 2005, when Plaintiff was officially terminated.  The three-year statute of limitations typically begins to toll at the time of the breach of contract.  Material Supply Intern., Inc. v. Sunmatch Indus. Co., Ltd., 146 F.3d 983 (D.C. Cir. 1998) (citing Capitol Place I Assoc. L.P. v. George Hyman Constr. Co., 673 A.2d 194, 198 (D.C. 1996)).  Thus, only claims arising after the commencement of the statutory period should survive dismissal.

8

     (2)     The statute of limitations bars Plaintiff's claim that Covert Action breached its
<u>alleged agreement to pay him a substantial debt for "past deferred salary."</u>

Plaintiff claims that before the end of 2002, Covert Action promised to pay him $148,000 in back pay owed from 1990 through 2002. <u>See</u> Complaint ¶¶ 63, 66. However, Plaintiff's claims arising prior to September 19, 2003, are barred by the three-year statute of limitations for contract actions. D.C. Code § 12-301(7). Where the consideration provided under a contract is "supported by past consideration in the form of an obligation to honor the old debt," the statute of limitations "commenc[es] with the time of the new promise." <u>Griffith v. Butler</u>, 571 A.2d 1161, 1165 (D.C. 1990) (quoting <u>United States v. Glens Falls Ins. Co.</u>, 546 F. Supp. 643, 645 (N.D.N.Y. 1982)). Thus, the statute of limitations would have begun running on Plaintiff's claim by the end of 2002 and would have expired by the end of 2005. Consequently, the statute of limitations bars Plaintiff's claim that Covert Action breached its agreement to pay him "past deferred salary."

     (3)     The statute of frauds and the statute of limitations bars Plaintiff's claim that Mr.
Wolf breached his alleged agreement to act as surety for Covert Action's alleged
<u>promise to pay Plaintiff for "past deferred salary."</u>

Plaintiff claims that Mr. Wolf agreed to act as surety to Covert Action's promise to pay him "past deferred salary." <u>See</u> Complaint ¶ 52 (referring to ¶ 33). A surety agrees to assume responsibility for a party's obligation to pay a debt. <u>Yasuna v. Miller</u>, 399 A.2d 68, 74 (D.C. 1979).

First, under the District of Columbia statute of frauds, D.C. Code § 28-3502, Plaintiff's surety claim must fail because he fails to allege the existence of a written agreement, containing the material terms of the alleged contract, which Mr. Wolf signed. <u>Penick v. Frank E. Basil, Inc. of Delaware</u>, 579 F. Supp. 160, 167 (D.D.C. 1984) (explaining that under the statute of frauds,

"any agreement to 'answer for the debt [or] default' of another must be evidenced by a writing") (citation omitted).  Plaintiff alleges that Mr. Wolf agreed to answer for the debt of Covert Action.  Therefore, because the parties never entered into a written agreement, Plaintiff's claim must fail.

Second, as explained above, the statute of limitations further bars Plaintiff's surety claim. Plaintiff's claims arising prior to September 19, 2003, are barred by the three-year statute of limitations for contract actions.  D.C. Code § 12-301(7); Griffith, 571 A.2d at 1165.  Plaintiff fails to establish when the alleged surety contract was either formed or breached, but from the Complaint, Mr. Wolf gathers that Plaintiff alleges the contract was formed no later than the end of 2002.  Complaint ¶¶ 29-32.  Thus, the statute of limitations would have begun running on the surety claim by the end of 2002 and would have expired by the end of 2005.  Consequently, the statute of limitations bars Plaintiff's surety claim.

**B.      Counts III and IV - Defendants' Breach of the Covenant of Good Faith and Fair Dealing.**

This Court should dismiss Plaintiff's claim that Defendants breached the covenant of good faith and fair dealing because (1) as an at-will employee, Plaintiff "[was] not protected by an implied covenant of good faith and fair dealing," Kerrigan v. Britches of Georgetowne, Inc., 705 A.2d 624, 627 (1997), and (2) as a matter of law, Plaintiff fails to plead facts to support such a claim.  American Nat'l Red Cross v. Travelers Indem. Co. of Rhode Island, 924 F. Supp. 304, 308 (D.D.C. 1996).  The duty of good faith and fair dealing arises pursuant to a valid contract and requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  Allworth v. Howard Univ., 890 A.2d 194, 201 (D.C. 2006).

10

(1)     <u>Plaintiff was an at-will employee.</u>

At-will employees cannot make claims that an employer breached a covenant of good faith and fair dealing. <u>Kerrigan</u>, 705 A.2d at 627; <u>see also</u> <u>McManus v. MCI Communications Corp.</u>, 748 A.2d 949, 957 (D.C. 2000) ("[i]t is clear that, as an at-will employee, appellant did not have a contractual employment relationship she could use as the basis for a suit for tortious interference with a contractual relationship."). Here, Plaintiff never alleges that he was anything but an at-will employee.

Plaintiff's own allegations indicate that his agreement with Mr. Wolf was strictly to work on a monthly basis. Complaint ¶ 77 (alleging that Mr. Wolf promised to pay him on a monthly basis, as opposed to Mr. Schapp and Ms. Ray who offered to pay Plaintiff on an annual basis). In <u>Sullivan v. Heritage Foundation</u>, the D.C. Court of Appeals explained that

> [W]here no such intent (to enter into a contract for a fixed period) is clearly
> expressed and, absent evidence which shows other consideration than a promise
> to render services, the assumption will be that even though they speak in terms of
> 'permanent' employment the parties have in mind merely the ordinary business
> contract for a continuing employment, terminable at the will of either party.

399 A.2d 856, 860 (D.C. 1979). The court found that the employee served the company in an at-will capacity, despite the fact that he entered into an annual salary arrangement and had moved from Boston at considerable expense, expecting to have secured employment for the duration of the year. <u>Id.</u> at 858, 860. Here, Plaintiff has an even weaker claim than the employee in <u>Sullivan</u> because (1) his alleged sacrifice made in consideration of remaining employed with Covert Action, declining another alleged offer of employment, Complaint ¶ 79, was less substantial than the plaintiff in Sullivan who moved a long distance at considerable expense; (2) his salary was made on a monthly, not annual, basis, <u>id.</u> at ¶ 78; and (3) he did not even have a written

11

contract.  See Sullivan, 399 A.2d at 858 (affirming the trial court's determination of the employee's at-will status).

Plaintiff also claims that Mr. Wolf promised to pay defendant "2k per month" for ten (10) years, Complaint ¶ 35, but he does not plead a single fact to support that allegation.  This Court should reject Plaintiff's conclusory allegation made without support.  Jankovic, 429 F. Supp. 2d at 170.  Even accepting the allegation that Mr. Wolf expressed such a statement, there is no evidence that Plaintiff provided consideration for the ten (10) year commitment, or that the parties intended to be bound by the agreement.  Plaintiff's allegation is not enough to provide any basis for a trier of fact to determine that Plaintiff was anything but an at-will employee.  Thus, as an at-will employee, Plaintiff's Counts III and IV must fail as a matter of law. Kerrigan, 705 A.2d at 627.

(2)     Plaintiff failed to allege that Defendants committed any tortious acts.

A claim alleging breach of a covenant of good faith arises from tortious interference with a contract; a claimant therefore must make allegations that "might reasonably be conceived as tortious conduct."  American Nat. Red Cross, 924 F. Supp. at 308 (citing Oulds v. Principal Mut. Life Ins. Co., 6 F.3d 1431, 1436-37 (10th Cir. 1993) ("[u]ntil the facts . . . have established what might reasonably be conceived as tortious conduct on the part of the insurer, the legal gate to submission of the [good faith and fair dealing] issue to the jury remains closed")); American Registry of Pathology v. Ohio Cas. Ins. Co., 401 F. Supp. 2d 75, 79-80 (D.D.C. 2005).  For a plaintiff to make out a claim of breach of the covenant of good faith and fair dealing, the plaintiff must show that the defendant exhibited bad faith with respect to execution of the contract and should "present evidence not simply of negligence or lack of diligence . . . , but of arbitrary and

12

capricious action." <u>Allworth</u>, 890 A.2d at 202.

Here, however, Plaintiff does not allege facts that could support a finding of bad faith tortious conduct by either Mr. Wolf or Covert Action.  Plaintiff alleges that in the fall of 2000, Mr. Wolf promised to pay him $2,000 per month to edit articles for Covert Action.  Complaint ¶¶ 21, 77.  Plaintiff does not deny that Mr. Wolf paid him $2,000 per month for some period of time.  The facts alleged in Plaintiff's General Allegations confirm that Mr. Wolf paid Plaintiff $9,000 in the fall of 2000, $27,000 in 2001, <u>id.</u> at ¶ 32, $20,000 in 2002, <u>id.</u> at ¶ 42, $20,000 in 2003, <u>id.</u>, $16,000 in 2004, <u>id.</u>, and $3,000 in 2005, <u>id.</u> at ¶ 44.  Plaintiff alleges that Mr. Wolf did not pay him for three months during 2004.  However, Plaintiff fails to allege that he even worked for those three months or that he had an agreement guaranteeing him that he would be paid for those three months.  Plaintiff also alleges that Mr. Wolf eventually terminated his employment without cause.  But Plaintiff does not allege that his agreement to work for Mr. Wolf was anything but at-will.  In fact, Plaintiff's own allegations indicate that he was an at-will employee hired to work on a month by month basis.  <u>Id.</u> at  ¶ 77.  Plaintiff's allegations that Mr. Wolf failed to pay him for three months and that he fired him without cause do not amount to tortious conduct.

Based on Plaintiff's pleading, this Court should determine that Plaintiff was an at-will employee and that therefore his claim should fail as a matter of law.  Even if the Court finds that the Complaint adequately facts to potentially support a finding that Plaintiff was not an at-will employee, Plaintiff's Counts III and IV should fail because he fails to allege that Defendants committed any tortious conduct.

### C.    Counts V - Mr. Wolf's Breach of Implied Contract.

This Court should dismiss Plaintiff's Counts V because a contract that cannot be performed within one year, like the ten (10) year employment contract that Plaintiff alleges in Count V, is not enforceable unless it is in writing.  D.C. Code § 28-3502.  Plaintiff alleges that he contracted with Mr. Wolf for a ten (10) year term of full-time employment and he seeks to enforce the remaining years on that alleged contract.  Thus, the alleged contract cannot be performed within one year.  Absent a presentation of a written agreement, which contains the essential terms of the employment contract and Mr. Wolf's signature, this Court should dismiss the claim.

Plaintiff claims that he relied on Mr. Wolf's alleged promise, Complaint ¶ 96, but such reliance is insufficient to remove the protection of the statute of frauds writing requirement.  See Easter v. Kass-Berger, Inc., 121 A.2d 868, 871 (D.C. 1956) (considering the length of an employment contract and finding that "in the absence of other and stronger circumstances, a mere refusal to perform an oral agreement is not such fraud as to prevent the application of the statute, despite hardship to a plaintiff.").

### D.    Count VI - Covert Action's Breach of Implied Contract.

Plaintiff's Count VI, claiming breach of an implied contract, must fail because Plaintiff fails to allege that Defendants did not pay him for periods when he actually worked.  Even if this Court does not dismiss Plaintiff's claim, the claim must be limited to the statutory period from September 19, 2003, through September 19, 2006, as discussed in Part IV.A, *supra*.

### E.    Counts VII-IX - Promissory Estoppel.

Plaintiff's Counts VII and VIII should be dismissed because the statute of frauds bars

14

enforcement of an agreement that cannot be enforced within one year. D.C. Code § 28-3502. Plaintiff claims $441,000 in damages based on Mr. Wolf's alleged promise to pay him $2,000 per month. Complaint ¶¶ 121, 123, 125. Plaintiff provides no support for this claim of $441,000 in damages, but Defendants believe that Plaintiff makes such a large claim for damages based on the false notion that he has a legal basis to enforce the ten (10) year contract alleged in the Complaint. Defendants assume that this is Plaintiff's rationale based on the fact that he claimed the same sum of $441,000 in Count V based on the alleged ten (10) year contract. Id. at ¶ 99.

Even if this Court does not dismiss these counts based on the statute of frauds, the Court should interpret Counts VII, VIII, and IX to only claim damages dating back three years from the time Plaintiff filed this action. D.C. Code § 12-301(7).

(1)    Plaintiff's claim is barred by the statute of frauds.

As explained in the discussion of Count V, *supra*, the statute of frauds bars Plaintiff's enforcement of the ten (10) year contract since it could not possibly have been fulfilled within one year. D.C. Code § 28-3502. Regardless, because Plaintiff fails to plead with particularity, the Court should dismiss this claim.

(2)    The statute of limitations limits Plaintiff to seeking damages arising on or after September 19, 2003.

Plaintiff's Counts VII, VII, and IX should be read at most to imply that Plaintiff has made a claim for compensation of $2,000 per month for the months that he actually worked for Covert Action during the period within the statute of limitations, September 19, 2003, through September 19, 2006. Complaint ¶ 121. Here, Plaintiff worked until June 2005, when his employment was terminated, id. at ¶ 74, so he would at most be entitled to payments from September 19, 2003, through June 2005, twenty-two months or $44,000. However, as Plaintiff

15

admits, see id. at ¶¶ 42, 44,  Defendants paid Plaintiff approximately $25,333 during that period, reducing his claim to approximately $19,000.

### F.    Count IX (sic) - Covert Action's Conversion of Plaintiff's Ideas and Work.

This Court should dismiss Plaintiff's tenth claim (mislabeled "Count IX") alleging that Covert Action stole "plaintiff's ideas and work," which Plaintiff alleges "were valuable property rights," Complaint ¶ 135, because based on Plaintiff's allegations, Covert Action never exercised unlawful control over Plaintiff's personal property.  To state a claim for conversion, a plaintiff must allege an unlawful exercise of ownership, dominion, or control over the personal property of another in denial or repudiation of that person's rights to that property.  Equity Group, Ltd. v. Painewebber Inc., 839 F. Supp. 930, 933 (D.D.C. 1993); see also Furash & Co., Inc. v. McClave, 130 F. Supp. 2d 48, 58 (D.D.C. 2001).

Plaintiff admits that Covert Action hired and paid Plaintiff to use Covert Action's offices, computers, and other resources, to help Publish Covert Action publications.  Thus, Covert Action did not unlawfully exercise control over Plaintiff's personal property.  Instead, any work products that Plaintiff produced while working for Covert Action was the property of Covert Action, not of Plaintiff.  The notion that Covert Action stole the ideas and work that it paid Plaintiff to produce is absurd.  Regardless, Plaintiff fails to allege a single idea or work product that Defendants have converted.  Plaintiff's conversion claim should be dismissed for failure to state a claim.[3]

---

[3] Some jurisdictions refer to actions relating to recovery of unpaid wages as claiming recovery for "conversion of unpaid wages," see Ocean Club Community Ass'n, Inc. v. Curtis, 935 So.2d 513, 516 (Fla. Dist. Ct. App. 3d 2006), but Plaintiff's Complaint does not claim unpaid wages. Instead, Plaintiff's complaint claims recovery for misappropriation of his ideas and work.

### G.    Count X (sic) - XI (sic)[4] - Defendants' Breach of Quasi-Contract.

This Court should dismiss Plaintiff's eleventh and twelfth claims (mislabeled "Count X" and "Count XI") claiming breach of quasi-contract, because he fails to allege work that he performed for Covert Action for which he was not paid.  For Plaintiff to recover on his quasi-contract claims, he must show that Defendants were "unjustly enriched at his expense and that the circumstances were such that in good conscience [Defendants] should make restitution."  News World Communications, Inc. v. Thompsen, 878 A.2d 1218, 1222 (D.C. 2005).  If the Court does not dismiss Plaintiff's claims, the court should limit it to back pay for wages that Plaintiff alleges Defendants owe him from September 19, 2003, through June 2005, when Plaintiff's employment officially terminated.  Frederick County Fruit Growers Ass'n, Inc. v. Martin, 968 F.2d 1265, 1272-74 (D.C. Cir. 1992) (discussing the underlying purpose of restitution and the awarding of unpaid wages) (citing Mitchell v. Riegel Textile, Inc., 259 F.2d 954, 955 (D.C. Cir. 1958)).

Although Plaintiff claims that Covert Actions was unjustly enriched, he fails plead sufficient facts to state a quasi-contract claim.  In Paragraph 138, Plaintiff lists a host of activities that he characterizes as "John Doe's work," Complaint ¶ 138, but does not allege anything about those activities.  The best that Covert Action can deduce from this list is that Plaintiff alleges to have actually engaged in such activities.  Assuming Plaintiff alleges to have engaged in such activities, Plaintiff still fails to allege that Covert Action did not pay him for those activities.  Rather, Plaintiff merely states, "[i]t would be unjust for Covert Action Publications, Inc. not to

---

[4] Defendants treat these claims together as Plaintiff's distinction between Mr. Wolf in his capacity as agent and as an individual is meaningless.

pay John Doe for the value of the benefit conferred." Complaint ¶ 140. Again, this conclusory

allegation means nothing. Plaintiff does not allege that Covert Action failed to pay Plaintiff for

the benefits Plaintiff provided. Plaintiff should have specifically alleged what benefits Covert

Action failed to pay him for and when those benefits were allegedly conferred. Otherwise

Covert Action is prejudiced by the vagueness of these allegations and unable to respond.

Plaintiff fails to plead with sufficient particularity and therefore fails to state a claim upon which

relief may be granted. This Court should dismiss his unjust enrichment claim because his

statements at best are conclusory allegations made without any supporting facts. Jankovic, 429

F. Supp.2d at 170.

Even if the Court does not dismiss Plaintiff's claim, the Court should limit recovery to

restitution in the form of unpaid wages during the three-year statue of limitations period. D.C.

Code § 12-301(7); see Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co., 870

A.2d 58, 63 (D.C. 2005); Frederick County, 968 F.2d at 1272-74. The work alleged would have

been performed pursuant to Plaintiff's employment relationship with Covert Action. Thus,

Covert Action's duty to make Plaintiff whole would at most require payment of the wages that

the parties allegedly had agreed upon. As explained above, recovery would be limited to wages

owed between September 19, 2003, and June 2005, when Plaintiff's employment officially

terminated.

### H.    Count XII (sic) - Punitive Damages - Mr. Wolf.

This Court should dismiss Plaintiff's thirteenth count (mislabeled "Count XII") claiming

punitive damages, pursuant to Rule 12(b)(6), Fed. R. Civ. P., because punitive damages is not a

cause of action, but merely a type of relief. International Kitchen Exhaust Cleaning Ass'n v.

Power Washers of N. Am., 81 F. Supp. 2d 70, 74 (D.D.C. 2000) (granting motion to dismiss plaintiff's punitive damages "claim," since "[defendant] is correct: punitive damages is a remedy and not a freestanding cause of action and should be dismissed"). Thus, Plaintiff's claim should be dismissed under Rule 12(b)(6).

## I.     Count XIII (sic) - Covert Action's Slander.

This Court should dismiss Plaintiff's fourteenth Count (mislabeled "Count XIII), which alleges that covert Action slandered him, because he fails to claim that the alleged statements were false or that they were made to non-privileged parties. "A plaintiff bringing a defamation action . . . must show: (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." Clawson v. St. Louis Post-Dispatch, LLC, 906 A.2d 308, 312-13 (D.C. 2006) (quoting Beeton v. District of Columbia, 779 A.2d 918, 923 (D.C. 2001)).

First, Plaintiff fails to provide the defamatory statement that Defendants allegedly made and fails to claim that the alleged statement was false. A statement cannot be defamatory if it is not false. Clawson, 906 A.2d at 312; see also Black v. National Football League Players Ass'n, 87 F. Supp. 2d 1, 6 (D.D.C. 2000) ("Conclusory statements averring defamation 'are insufficient to state a claim.'") (quoting Hoffman v. Hill and Knowlton, Inc., 777 F. Supp. 1003, 1005 (D.D.C. 1991)). Thus, Plaintiff's conclusory allegations that Defendants defamed him are insufficient to support Plaintiff's claim.

19

Second, Plaintiff does not allege that Defendants ever published the alleged statement to a non-privileged third-party. Plaintiff refers to a "letter dated August 16, 2005, to a third party." Complaint ¶ 152. In fact, the letter in question was actually written by Lynne Bernabei, counsel for Defendants, and was addressed to Mr. Giang Tran, another former employee of Covert Action, in response to an anticipated legal claim asserted by Mr. Tran. See L. Bernabei Letter to G. Tran (August 16, 2005) (attached and incorporated hereto as Exhibit 4).

Statements made in the course of, or preliminary to, judicial proceedings are absolutely privileged. Arneja v. Gildar, 541 A.2d 621, 623 (D.C. 1988) (citing Restatement (Second) of Torts § 586 (1977) ("An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding . . . if it has some relation to the proceeding.")). Sending a letter preliminary to proposed judicial proceedings, and making statements "[i]n hearings before the Courts of the District of Columbia with third parties in attendance," Complaint ¶¶ 152-53, does not sufficiently allege publication. See Global Van Lines, Inc. v. Kleinow, 411 A.2d 62 (D.C. 1980). Statements made in court or in connection with prospective legal proceedings are privileged, so that the communication of the statement would not satisfy the publication requirement. Plaintiff's failure to plead with particularity renders his claim fatal.

Third, Plaintiff pleads no facts to support his claim that Defendants were negligent in their alleged publication of defamatory statements, see Complaint ¶ 154, as required under D.C. law. Clawson, 906 A.2d at 312-13. Plaintiff provides no information indicating why Defendants should have known of the falsity of their alleged statements. Indeed, as stated above, Plaintiff

20

never denies the truth of the alleged statements.

Finally, Plaintiff neither alleges that these supposed statements caused him "special harm," nor does he allege facts to support such a claim.  Clawson, 906 A.2d at 312-13.

Accordingly, Plaintiff's slander claim should be dismissed for failure to state a claim.

### J.      Count XIV (sic) - Intentional Infliction of Emotional Distress.

This Court should dismiss Plaintiff's fifteenth Count (mislabeled "Count XIV") for failure to state a claim because Plaintiff does not allege conduct by Defendants that was "extreme and outrageous" and which caused Plaintiff "severe emotional distress.  To make a claim of intentional infliction of emotional distress ("IIED"), a plaintiff must allege "(1) 'extreme and outrageous' conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff 'severe emotional distress.'"  Sere v. Group Hospitalization, Inc., 443 A.2d 33, 37 (D.C. 1982) (quoting Restatement (Second) of Torts § 46 (1965)); see also Joyner v. Sibley Memorial Hosp., 826 A.2d 362, 373 (D.C. 2003) (citing Kerrigan, 705 A.2d 624 at 628).  For example, in Kerrigan, the D.C. Court of Appeals upheld the dismissal of the plaintiff's IIED claim where the employer allegedly assaulted and battered her.  705 A.2d at 628. Here, Plaintiff's allegations do not satisfy any of these pleading requirements.

Plaintiff does not allege that Defendants engaged in conduct that could be characterized as extreme or outrageous.  "To establish the required degree of 'outrageousness,' the plaintiff must allege conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  Kerrigan, 705 A.2d at 628.  The D.C. of Appeals stressed that in the employment context, the proof is particularly demanding to support an IIED claim.  Id.

21

Kerrigan cited a number of other circumstances,[5] all far more serious than the circumstances here, where D.C. courts have rejected IIED claims.  Id.  In Kerrigan, plaintiff claimed that defendant "targeted him for a sexual harassment investigation, manufactured evidence against him in order to establish a false claim of sexual harassment, leaked information from the investigation to other employees, and unjustifiably demoted him to the position of store manager in order to promote a woman to his position."  Id.  Despite these allegations, which were far more severe and detailed than those that Plaintiff here alleges against Defendants, the court did not find that this gave rise to an IIED claim.  Id. (citing Howard Univ. v. Best, 484 A.2d 958, 986 (D.C.1984)).  In Joyner, the Plaintiff alleged battery, yet the court still did not find outrageous conduct sufficient to sustain an IIED claim.  826 A.2d at 373.

Here, Plaintiff's claim, far less severe and outrageous than the situations discussed in Kerrigan and Joyner, where the courts upheld the dismissal of IIED claims, must be dismissed for failure to state a claim.  IIED claims are reserved for conduct that is truly outrageous, but Plaintiff does not allege outrageous conduct, so that he fails to state a claim.

**K.    Count XIV (sic) - Negligent Infliction of Emotional Distress.**

This Court should dismiss Plaintiff's sixteenth Count (mislabeled "Count XIV") claiming negligent infliction of emotional distress, because Plaintiff fails to claim that Defendants created a "zone of physical danger" in Plaintiff's immediate vicinity.  Plaintiff's filing of this claim is

---

[5] See, e.g., King v. Kidd, 640 A.2d 656, 670-74 (D.C. 1993) (finding that the defendant's conduct was not extreme and outrageous "when supervisor failed repeatedly to respond to employee's sexual harassment complaints") and Hoffman v. Hill & Knowlton, Inc., 777 F. Supp. 1003, 1005 (D.D.C. 1991) (finding defendant's conduct was not outrageous "when employer intentionally interfered with employee's ability to do job, stated false, pretextual reasons for dismissing an employee knowing it would be communicated to others, and dismissed employee.").

both offensive to this Court and burdensome to Defendants.  The D.C. Court of Appeals has

clearly, and repeatedly, established that to make a claim of negligent infliction of emotional

distress, Plaintiff  "must show that [he] was in the zone of physical danger created by

[defendant's] conduct and was caused . . .  to fear for [his] own well-being."  Jane W. v.

President & Directors of Georgetown College, 863 A.2d 821, 826 (D.C. 2004) (citing Williams

v. Baker, 572 A.2d 1062, 1064 (D.C. 1990)); see also David v. District of Columbia, 436 F.

Supp. 2d 83, 89 (D.D.C. 2006) ("[i]n the District of Columbia, a plaintiff may recover for

negligent infliction of emotional distress if the plaintiff proves (1) that the plaintiff suffered

either a physical impact or was within the zone of danger of the defendant's actions, (2) that the

plaintiff suffered emotional distress that was serious and verifiable, and (3) that the defendant

acted negligently.").

Here, Plaintiff neither alleges any physical injury caused by Defendants, nor ever being

in a zone of physical danger created by Defendants.  Thus, this Court should dismiss Plaintiff's

claim.

### V.    PLAINTIFF'S CLAIMS MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION FOR FAILURE TO SATISFY THE AMOUNT IN CONTROVERSY REQUIREMENT FOR DIVERSITY JURISDICTION.

The Court should find it lacks subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), over

Plaintiff's claims because they do not amount to more than $75,000, the threshold amount

required to satisfy diversity jurisdiction.  28 U.S.C. § 1332(a).  Defendants have determined that

based on Plaintiff's Complaint, the most that Defendants could be held liable for in unpaid

wages is $38,467, plus interest.[6]  See chart below.

As explained in Section IV, supra, the statute of limitations bars Plaintiff from seeking relief for claims that arose prior to September 19, 2003.  Further, the statute of frauds bars Plaintiff from seeking damages based on either (1) Mr. Wolf's alleged promise to act as surety on Covert Action's alleged promise to pay him "past deferred salary," or (2) Defendants' alleged promise to employ Plaintiff for a period of ten (10) years.

The only remaining portions of Plaintiff's Complaint that could even potentially survive this Motion to Dismiss are those seeking compensation for unpaid wages, and even these claims must fail because the amount of wages in controversy is well short of $75,000.

Defendants base their calculation of Plaintiff's claim for unpaid wages on the maximum amount that the Complaint could be interpreted to plead between September 19, 2003, and September 19, 2006.  Defendants, for the sake of this motion, have assumed that throughout the time that Covert Action allegedly employed Plaintiff, he was paid, as the Complaint states, a salary of $800 for September 19, 2003, through September 30, 2003,[7] and a salary of $3,000 per month, Complaint ¶ 40, from October 2003 through June 2005, when Plaintiff alleges his employment was terminated.  Complaint ¶ 45.  This amounts to a total of $63,800.  However, Plaintiff admits to receiving payments totaling over $25,000 from Defendants.  Thus the total

---

[6] Defendants believe that based on the Complaint, Plaintiff admits to receiving payment in full. Plaintiff does not allege that he has a right to payment for work that he performed during the statutory period of September 19, 2003, through September 19, 2006.  He alleges various salaries for that period, but he does not allege that he actually worked throughout that period. Regardless, assuming he worked throughout that period, Plaintiff still fails to make claims sufficient to satisfy 28 U.S.C. § 1332(a).

[7] Based on a salary of $2,000 per month.  Complaint ¶¶ 21, 40.

24

amount of unpaid wages amounts to approximately $38,467.

| Year | Plaintiff's Salary | Amount Plaintiff admits he was paid | Total that Defendants can reasonably understand that Plaintiff claims they owe from Complaint |
|---|---|---|---|
| September 19, 2003 through September 30, 2003 - $2,000 per month | $800 | Included below. | $800 |
| October 2003 through December 2003 - $3,000 per month | $9,000 | $6,333 | $2,667 |
| 2004 - $3000 per month | $36,000 | $16,000 | $20,000 |
| 2005 - $3000 per month (January - June) | $18,000 | $3,000 | $15,000 |
| July 2005 - present (not employed by Defendants) | $0 | $0 | $0 |
| Total | $63,800 | $25,333 | $38,467 |

Plaintiff alleges that his salary was $24,000 per year from the fall of 2000 through 2001. Plaintiff makes several unsupported allegations that Covert Actions increased Plaintiff's salary to $45,000 per year in January 2002, just over one year after the parties allegedly agreed to payment of $24,000 per year, and then to $48,000 per year in 2003. Complaint ¶¶ 27, 28. Plaintiff provides no support whatsoever for these claims. Plaintiff should have provided details explaining the circumstances that compelled Covert Action to double his salary in such a short period of time. Plaintiff offers no allegation that such a pay increase was discussed or bargained for, either in writing or orally, between him and either of Defendants. He merely states that Covert Action unilaterally increased his salary from $24,000 per year to $45,000 per year.

Further, Plaintiff does not claim that he was in fact paid more than he had previously

been paid.  Plaintiff alleges he was paid $27,000 in 2001 and only $20,000 in 2002 and 2003.

Complaint ¶ 42.  This actually seems to indicate that Plaintiff received a pay decrease rather than

a pay increase.  By simply stating that he received a pay increase without support, Plaintiff has

not stated a claim upon which relief can be granted.  Jankovic, 429 F. Supp. 2d at 170.

Later in his allegations, Plaintiff claims that in 2003 Mr. Wolf agreed to increase

Plaintiff's salary from $2,000 to $3,000 per month, or $36,000 per year.  Complaint ¶ 40.

Plaintiff fails to provide support for this allegation as well.  The Complaint is very unclear, but

either Plaintiff claims that he earned two salaries simultaneously – $36,000 per year as well as

$48,000 per year – or Plaintiff has pled himself out of court by alleging conflicting accounts

regarding the amount of his salary.  Again, Plaintiff admits to being paid $20,000 in 2003.

Complaint ¶ 42.  Defendants have assumed, for the sake of this motion, that Plaintiff has pled

that his salary from October 2003 through June 2005 was $3,000 per month.

Plaintiff claims he received yet another pay increase to $52,000 per year starting in fiscal

year 2004.  Complaint ¶ 39.  Later in the Complaint, still without support, Plaintiff claims that he

received a pay increase in January 2004 to "$55.5k" (sic), Complaint ¶ 72, which is $3,500 more

than the figure of $52,000 that he previously pled.  Plaintiff's inconsistency coupled with his

sloppiness discredits his claims and prejudices the Defendants' case.  Regardless of these

inconsistencies, Plaintiff provides no explanation as to why Mr. Wolf or Covert Action would

have granted him such a significant pay raise.  He does not plead that the parties bargained for

the raise or that the raise was due to his outstanding performance.  He simply alleges that Covert

Action increased his salary from $24,000 per year in 2002 to $52,000 per year in 2004.  Plaintiff

should have provided support to demonstrate that such a significant raise was in fact offered,

warranted, or within the financial abilities of the small, struggling publication.  Complaint ¶¶ 3,

36 (recognizing Covert Action's financial difficulties).

This Court should reject Plaintiff's unsupported conclusory allegations regarding drastic

pay increases.  Without support, the idea that a small non-profit business, which Plaintiff admits

was struggling financially, would increase his salary by more than 100% within a matter of three

years is preposterous.  Thus, the Court should ignore Plaintiff's totally unsupported conclusory

allegations.  Jankovic, 429 F. Supp. 2d at 170.

**VI.    CONCLUSION.**

For the foregoing reasons, this Court should dismiss all of Plaintiff's claims for failure to

state a claim and for lack of subject matter jurisdiction.

Respectfully submitted,

/s/ Lynne Bernabei

_____

Lynne Bernabei, Esquire        # 938936
Alan R. Kabat, Esquire         # 464258
The Bernabei Law Firm, PLLC
1775 T Street, N.W.
Washington, D.C.  20009-7124
tel. (202) 745-1942
fax (202) 745-2627

Counsel for Defendants

Dated: November 8, 2006

27