**Exhibit 1**

Defendants' Motion to Dismiss
<u>Doe v. Wolf,</u> *et al.*, C.A. No. 1:06-CV-01645

RECEIVED

**SUPERIOR COURT**
**DISTRICT OF COLUMBIA**   2005 JUN 24  P 5: 54
**CIVIL DIVISION**

DISTRICT OF COLUMBIA
COURTS

Heather Cottin
137 New York Avenue
Freeport, N.Y. 11520,
    Plaintiff

v.

Civil Action No.

Louis Wolf &
  Dolores Neuman
3107 Ellicott Street N.W.
Washington, D.C. 20016
    Defendants

RECEIVED
Civil Clerk's Office
JUN 2 4 2005
Superior Court of the
District of Columbia
Washington, D.C.

Philip Wheaton &
  Susan Wheaton
7211 Spruce Avenue
Takoma Park, Md. 20912
    Defendants

**COMPLAINT**

COMES NOW THE PLAINTIFF, Heather Cottin, by and through counsel, and states the following:

1. I am a resident of Freeport, N.Y. and Treasurer and an unpaid member of Covert Action Publications, Inc.'s dwindling Board of Directors. Defendant Louis Wolf is a resident of Washington, D.C. and is President of Covert Action Publications, a Washington, D.C. not-for-profit corporation, and a member of its Board of Directors. Defendant Dolores Neuman, a resident of Washington, D.C., is Louis Wolf's wife and, although holding no official position, has deeply involved herself in the daily operations of Covert Action Publications and its

magazine, *Covert Action Quarterly* (CAQ), a violation of Board rules. Defendant Philip Wheaton, a divorced priest and resident of Takoma Park, Md., was an illegally paid member of Covert Action Publications's Board of Directors. Susan Wheaton, a resident of Takoma Park, Md. and wife of Philip Wheaton, has also deeply involved herself in the operations of Covert Action Publications (CAP) even though she holds no position with that organization. She has often hosted secret Board of Directors meetings at their home in Takoma Park.

2. Plaintiff Heather Cottin further states that this Court has jurisdiction in this matter under § 13-423, § 29-301 et seq., § 32-1301 et seq. of the D.C. Code of 2001. Additionally, she affirms:

3. That Defendants, in violation of D.C. Code § 29-301 et seq., have illegally seized control of the offices of the magazine *Covert Action Quarterly*, despite a properly-noticed meeting held June 23, 2005 which removed them from the CAP board. See attachments.

4. That they have fired CAQ's managing editor and webmaster without cause and without authorization, preventing them from continuing their work as editor and website manager of that publication, and costing the magazine $3,000 for each and every week that it does not publish.

5. That, by this firing, they have effectively closed down the magazine, ending its publication and refusing to refund large sums of money already paid by its subscriber base, thus stealing tens of thousands of dollars from some 3,000 loyal readers.

6. That they have failed and refused to pay the editor his full salary and benefits, owed him for 15 years, despite numerous assertions and even a promissory note alleging that he would be paid in full. Indeed, Defendants have failed and refused to provide the staff even their final paycheck.

2

7. That Defendants have violated the privacy of the magazine's subscribers by providing, without their authorization or knowledge, a copy of their names and addresses to a Department of Defense contractor.

8. That Defendants have illegally seized control of the magazine's bank accounts, estimated to be $15,000.00. They are necessary for the publication's future operations

9. That Defendants have concealed from Plaintiff Heather Cottin, Treasurer of Covert Action Publications, the financial status both of the magazine and corporation, excluding her from any signatory authority over those organizations' bank accounts.

10. That Defendants have changed the locks on the magazine's offices without justification or authorization and, without Board approval, have issued orders to the building manager wherein the office is located to physically prevent the staff and Heather Cottin from entering and from obtaining mail addressed to the magazine, its editor, and board of directors.

11. That Defendants, particularly Louis Wolf and Philip Wheaton, a divorced priest, have engaged in repeated instances of deliberate, premeditated discrimination based on race, religion, and national origin. Both staff members are of the Oriental race, were born in non-European countries, and espouse a non-Judeo-Christian religion.

12. Defendants, in particular Louis Wolf, a millionaire with a $25,000.00 a month trust fund, have a sordid, lengthy history of lockouts, harassment, deception, and constructive discharge of employees, as well as associations with known crackpots espousing dubious, specious theories about what needs to be published in the magazine. They have engaged in tax fraud and breach of contract.

13. Examples of egregious past behavior are the following:

3

- THEFT--(i) Louis Wolf had stolen hundreds of photographs and negatives from the Associated Press (AP) archive in New York City over the course of many years. He was finally caught by a surveillance camera. In return for paying a substantial fine, AP dropped the charges against him. (ii) Louis Wolf also stole pages from volumes at the Library of Congress by slashing them from their bindings. He also stole photographs from the Washington, D.C. central library. At one point, because of this misconduct, the CAP board of directors barred Wolf from the magazine's offices for one (1) year.

- LOCKOUTS--The current staff's treatment by Defendants is only the most recent in a series of lockouts engineered by Louis Wolf. (i) In 1998, editor Terry Allen, associate editor Sanho Tree, and support staffer Barbara Neuwirth were locked out of their office and summarily fired. Their notice was a sheet of paper slipped under their doors in the night. (ii) In 1989, Louis Wolf changed the office locks on a previous editor while she was at lunch (because she had written an article critical of the German Democratic Republic's intelligence agency, the Stasi).

- HARASSMENT--Defendants, in particular Louis Wolf, have harassed their employees through rumor campaigns designed to smear their character, bullied them for not publishing crackpot articles, and charged them with theft (which was never reported to the police). They have used racist language intentionally designed to demean Muslims, Arabs, and others, such as claiming that Muslims can't fly airplanes.

- CONSTRUCTIVE DISCHARGE--Defendants effectively forced the prior editor to quit the magazine because he questioned their interference in the operation of the magazine and suggested that they were "cooking the books" to cover shortfalls of withholding taxes owed the federal and D.C. governments. He wrote a letter to the U.S. Internal Revenue Service about the practice. In retaliation, Defendants then sued the editor, claiming that he had taken software from the office and had not returned it.

- CRACKPOTS--Defendant Louis Wolf has long sought to publish articles written by or suggested by (i) lunatics who believed that Adolf Hitler was living in Antarctica, or, (ii) lobbyists tied to Azerbaijan praising that country's undemocratic government, or (iii) undocumented claims that the U.S. government was using screwworms as a weapon of war.

- TAX FRAUD--Defendants have, as mentioned above, played fast and loose with the Internal Revenue Service and the D.C. Treasurer, not paying payroll withholding, and Social Security taxes when due. More egregiously, Defendants are now engaged in what appears to be money-laundering, giving $4,000.00 to $6,000.00 per month to a 501(c)(3) organization, taking a personal tax deduction, and then receiving that payment back, less a service fee. The funds are then applied to the magazine's operations, which they treat as Defendants' personal property.

- **FRAUD ON MAGAZINE SUBSCRIBERS:** Wheaton, during September 2004, sought $100,000 in contributions from subscribers to continue the magazine while having the intention to close down the operation entirely.

- **BREACH OF CONTRACT:** Defendants, in particular Louis Wolf, signed a March 2004 promissory note to adequately fund operation of CAQ for the next five (5) years. The promised monies have recently ceased. Defendants, in particular Louis Wolf and Philip Wheaton, have signed numerous memoranda, backed by oral statements, regarding the need for equal treatment of foreign-born workers at the magazine and promising $150,000.00 in back salary and benefits to the editor (who relied on these promises to his detriment).

- **VIOLATION OF U.S. GOVERNMENT TRAVEL RESTRICTIONS AND OFFICE OF FOREIGN ASSETS CONTROL REGULATIONS:** Wolf frequently travels to Cuba, taking his family and others and spending substantial numbers of U.S. dollars in that country. In a deal arranged with James Drew and Lynne Bernabei, attorneys for CAQ, Wolf once promised establishment of a $200,000 foundation for a U.K. national, Rory O'Neill, to induce him to become *Covert Action* editor as well as a month-long vacation for him in Cuba.

12. WHEREFORE, your Plaintiff Heather Cottin prays this Honorable Court for judgment against Defendants (1) in the amount of $200,000.00 to cover unpaid salary, benefits, and taxes to the editor and webmaster; (2) for enforcement of the March 2004 promissory note requiring five (5) years of specified financial support of the magazine *Covert Action Quarterly*; (3) for a Temporary Restraining Order preventing Defendants from looting CAP's bank accounts, stealing its computers, wiping clean their databases, and removing furniture, equipment, books, and other tangible and intangible objects from CAQ's offices; (4) for a declaratory judgment that the present newly-constituted board is the legitimate board of CAP; (5) that Defendants Louis Wolf and Philip Wheaton turn over to Heather Cottin the keys and lease to the CAQ office space; (6) for Defendants to pay Plaintiff Heather Cottin all her reasonable attorney's fees and costs for bringing this action; (7) and for such other and further relief as this honorable Court may deem just and proper and the nature of Plaintiff's cause may require.

DECLARATION: I do solemnly declare and affirm under penalty of law that the contents of the foregoing Complaint are true and correct to the best of my knowledge, information, and belief.

Dated: June 23, 2005

Heather Cottin
Plaintiff

J. Michael Springmann
Law Office of J. Michael Springmann PLLC
4619 Yuma Street N.W.
Washington, D.C. 20016
Tel. (202) 686-4869
Fax (202) 966-1254
E-mail: springmannslaw@fcc.net

Counsel for Plaintiff

6

**Exhibit 2**

Defendants' Motion to Dismiss
Doe v. Wolf, *et al.*, C.A. No. 1:06-CV-01645

LAW OFFICES
## BERNABEI & KATZ, PLLC
1773 T STREET, N.W.
WASHINGTON, D.C. 20009-7139

LYNNE BERNABEI
DEBRA S. KATZ°
LISA J. BANKS
ARI M. WILKENFELD+
ALAN R. KABAT+
AVI L. KUMIN◊
RASHIDA A. ADAMS°
RENEE SERVANCE✦
LEMA R. BASHIR*

(202) 745-1942
TELECOPIER: (202) 745-2627
E-MAIL: BERKATZLAW@AOL.COM
WEBSITE: WWW.BERNABEIANDKATZ.COM

OF COUNSEL:
DAVID J. MARSHALL

+ ADMITTED IN MD ALSO
° ADMITTED IN NY ALSO
◊ ADMITTED IN CA ALSO
✦ ADMITTED IN WI ONLY
* ADMITTED IN MD ONLY

By Telecopier and First Class Mail
August 2, 2005

J. Michael Springman
Law Office of J. Michael Springman PLLC
4619 Yuma Street N.W.
Washington, D.C. 20016

Re: Heather Cottin v. Louis Wolf, *et al.*
No. 2005 C.A. 004952B

Dear Mr. Springmann:

I am in receipt of a Praecipe filed by you on Friday, July 29, 2005, dismissing the above-captioned matter without prejudice.

You will recall that on July 25, 2005, Judge Wertheim, the Judge in Chambers, heard and denied your Motion for a Temporary Restraining Order. He admonished you, specifically citing Rule 11, that your Complaint was unfounded and contained inappropriate content and insufficient allegations of fact and law.

Four days later, on July 29, 2005, Judge Broderick denied your Motion for a Preliminary Injunction. In doing so, she specifically stated that she was denying your Motion because she did not believe that your client would prevail on the merits of her claim. That same day you filed your Praecipe dismissing the entire case without Prejudice.

We fully expect you and your client to re-file the same baseless Complaint against my clients, perhaps curing some of the more obvious, and indeed, sanctionable, errors contained in your first effort. Moreover, the fact that you did not seek leave to amend your Complaint but are rather dismissing and re-filing strongly suggests that you are judge-shopping.

J. Michael Springman
August 2, 2005
Page 2

    Be advised that should you re-file a new lawsuit based on similar allegations against my clients, we will be forced not only to seek its dismissal and move for sanctions against you and your client, but additionally may pursue claims of malicious prosecution and abuse of process against you and your client.

Sincerely,

Ari M. Wilkenfeld

**Exhibit 3**

Defendants' Motion to Dismiss
<u>Doe v. Wolf,</u> *et al.*, C.A. No. 1:06-CV-01645

SUPERIOR COURT
DISTRICT OF COLUMBIA
CIVIL DIVISION

Heather Cottin                                  *
137 New York Avenue                             *
Freeport, N.Y. 11520,
    Plaintiff                                *

    v.                                       *
                                         Civil Action No. 05-CA-0004952

Louis Wolf &                                    *
  Dolores Neuman
3107 Ellicott Street N.W.                       *
Washington, D.C. 20016
    Defendants                               *

Philip Wheaton &                                *
  Susan Wheaton
7211 Spruce Avenue                              *
Takoma Park, Md. 20912
    Defendants                               *

**PRAECIPE**

    THE CLERK WILL PLEASE NOTE that the Plaintiff, Heather Cottin, hereby withdraws the above-captioned Civil Action WITHOUT prejudice.

July 29, 2005                                   Respectfully submitted,

                                                            Heather Cottin
                                                             Plaintiff

                                                             J. Michael Springmann
                                                            Law Office of J. Michael Springmann PLLC
                                                            4619 Yuma Street N.W.
                                                           Washington, D.C. 20016
                                                           D.C. Bar No. 465099
                                                           Tel. (202) 686-4869
                                                          Fax (202) 966-1254
                                                          Counsel for Plaintiff

## CERTIFICATE OF SERVICE

On July 29, 2005, I hereby certify that I placed a copy of the foregoing Praecipe in the U.S. mails, 1st class postage pre-paid. The envelope was addressed to Ari Wilkenfeld, Bernabei & Katz, 1773 T Street N.W.; Washington, D.C. 20009.

J. Michael Springmann

**Exhibit 4**

Defendants' Motion to Dismiss
Doe v. Wolf, *et al.*, C.A. No. 1:06-CV-01645

LAW OFFICES
## BERNABEI & KATZ, PLLC
1773 T STREET, N.W.
WASHINGTON, D.C. 20009-7139

LYNNE BERNABEI
DEBRA S. KATZ°
LISA J. BANKS
ARI M. WILKENFELD+
ALAN R. KABAT+
AVI L. KUMIN◊
RASHIDA A. ADAMS°
RENEE SERVANCE✦
LEMA R. BASHIR*

(202) 745-1942
TELECOPIER: (202) 745-2627
E-MAIL: BERKATZLAW@AOL.COM
WEBSITE: WWW.BERNABEIANDKATZ.COM

OF COUNSEL:
DAVID J. MARSHALL

+ ADMITTED IN MD ALSO
° ADMITTED IN NY ALSO
◊ ADMITTED IN CA ALSO
✦ ADMITTED IN WI ONLY
* ADMITTED IN MD ONLY

By First-Class Mail
August 16, 2005

Mr. Giang Tran
3307 Walters Lane #204
Forestville, MD 20747

Re: Covert Action Quarterly

Dear Mr. Tran:

James Drew referred your letter of July 28, 2005, to me to answer. In your letter, you demand $5,500 as payment for your services to CAQ from December 2004 to June 2005. CAQ is attempting to investigate this claim, but its process has been slowed by the fact that the CAQ checkbook was stolen from the CAQ offices. We will respond to your request as promptly as possible.[1]

---

[1] In your letter, you claim that "[your] design for the magazine and the website can't be used by any other designer and/or CAQ without [your] approval after [your] departure from the magazine, even after the full payment for [your] services." This claim has no legal basis. As CAQ contracted with you on a work-for-hire basis, the designs remain the property of CAQ. At no time did the parties agree, either in writing or orally, that you would retain sole rights to these designs.

You also note in your letter that you were considering reporting this dispute to the wage and hour division of the D.C. Department of Employment Services. The D.C. wage and hour law, however, does not apply to you, and D.C. Department of Employment Services has no jurisdiction to receive such a complaint, as you were an independent contractor to CAQ rather than a regular employee. See D.C. Code § 32-1302 (D.C. wage and hour law applies only to employees).

Mr. Giang Tran
J. Michael Springmann
August 16, 2005
Page 2

    I will note, however, that your demand for payment at this time is particularly disturbing, considering your likely involvement in the theft of property from the CAQ office. In June 2005, an external harddrive (LaCie) purchased for CAQ's MacIntosh computer, containing electronic copies of CAQ's issues nos. 70-78 and other files, was stolen from the CAQ office. You and Habib were the only people who had access to the CAQ office at that time, and you were the only person with the technical expertise to take this property. We thus strongly believe that you either stole this property or assisted someone else, such as Habib, in the stealing of this property. CAQ has filed a police report regarding this matter and demands that you return this property at once, or remain liable criminally and civilly for this theft. We thus request the immediate return of this property and any other property you have taken, or assisted Habib from taking, from the CAQ offices.

    Given the serious charges against you, we assume you will be interested in a global settlement of this matter which releases you from further liability. We will contact you shortly regarding our proposal for resolution of this matter.

                              Sincerely,

                              Lynne Bernabei

cc:    James Drew, Esquire