IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:06-CV-01645 |
| ) | Judge Richard J. Leon |
| LOUIS WOLF, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S
## MOTION TO DISQUALIFY

Defendants Louis Wolf and Covert Action Publications, Inc., through undersigned counsel, respectfully submit their Opposition to Plaintiff's Motion to Disqualify. As set forth in the attached memorandum, plaintiff has failed to allege adequate grounds to satisfy his burden of showing that there was a prior attorney-client relationship between plaintiff and defendants' counsel. Further, plaintiff has failed to comply with Local Civil Rule 7.1(m), thereby burdening this Court with a legally unsupportable motion.

Respectfully submitted,

/s/ Lynne Bernabei

_____
Lynne Bernabei, Esquire     # 938936
Alan R. Kabat, Esquire      # 464258
The Bernabei Law Firm, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7124
tel. (202) 745-1942
fax (202) 745-2627

Counsel for Defendants

Dated: November 15, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE, </br></br> Plaintiff, </br></br> v. </br></br> LOUIS WOLF, *et al.*, </br></br> Defendants. | Civil Action No. 1:06-CV-01645 </br> Judge Richard J. Leon |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OPPOSITION
TO PLAINTIFF'S MOTION TO DISQUALIFY**

Defendants respectfully request that this Court deny plaintiff's motion to disqualify defendants' counsel. First, plaintiff failed to comply with Local Civil Rule 7.1(m), since plaintiff's counsel filed the motion without making any attempt to discuss the proposed motion with defendants' counsel. If plaintiff's counsel had complied with LCvR 7.1(m), he would have learned that the representations made by his client were factually and legally incorrect. Second, plaintiff's motion is based on serious misrepresentations of the record. The contacts between plaintiff and defendants' counsel did not create an attorney-client relationship, as defendants' counsel (long time personal attorney for defendant Lou Wolf and his spouse) expressly disavowed any such relationship and provided no legal advice to plaintiff about any matters relevant to plaintiff's lawsuit.

    **I.**    **This Court Must Deny Plaintiff's Motion to Disqualify for Plaintiff's
Counsel's Failure to Comply With Local Civil Rule 7.1(m).**

As a threshold matter, this Court must deny plaintiff's motion to disqualify, because plaintiff's counsel failed to comply with Local Civil Rule 7.1(m), which imposes a non-waivable duty on the moving party to discuss the proposed motion with the non-moving party:

> Before filing any nondispositive motion in a civil action, **counsel shall discuss the anticipated motion with opposing counsel,** either in person or by telephone, in a good faith effort to determine whether there is any opposition to the relief sought and, if there is opposition, to narrow the areas of disagreement.  **A party shall include in its motion a statement that the required discussion has occurred, and a statement as to whether the motion is opposed.**

LCvR 7.1(m) (emphasis added).  Here, plaintiff's counsel made no attempt to contact defendants' counsel, whether by telephone, facsimile, or electronic mail, to discuss the proposed grounds for the motion to disqualify.  See Affidavit of Lynne Bernabei ("Bernabei Aff."), at ¶ 5 (Nov. 15, 2006) (attached and incorporated hereto as Exhibit 1).  Nor did plaintiff's counsel include the required 7.1(m) statement in its motion to disqualify.[1]

The courts have not hesitated to deny or strike motions that failed to comply with this rule.  See, e.g., United States ex rel. Tennessee Valley Marble Holding Co. v. Grunley Construction, 433 F. Supp. 2d 104, 112 (D.D.C. 2006) (motion "denied as premature for failing to confer with defendant Atlantic's counsel before filing the motion"); In re Verizon Internet Serv., Inc., 217 F.R.D. 239, 240 (D.D.C. 2003) (striking motion, because "I expect counsel to be more familiar with the local rules"); Sokos v. Hilton Hotels Corp., 283 F. Supp. 2d 42, 55-57 (D.D.C. 2003) (imposing monetary sanctions for failure to comply with Rule 7.1(m)); Alexander v. FBI, 186 F.R.D. 197 (D.D.C. 1999) ("The uncontroverted facts pertaining to plaintiff's earlier motion establish that plaintiffs' counsel did not meet the requirements of this rule.").

As Judge Walton explained, the purpose of Rule 7.1(m) is to avoid burdening the court with frivolous motions:

---

[1] Plaintiff's motion is a non-dispositive motion, since it would not "result either in the determination of a particular claim on the merits or elimination of such a claim from the case," Niedermeier v. Office of Max Baucus, 153 F. Supp. 2d 23, 26 (D.D.C. 2001), as for a dispositive motion.

2

> Had plaintiffs' counsel conferred with the defendants' counsel prior to filing the Motion for Sanctions, **the Court is confident that the plaintiff's counsel would have been advised by defense counsel that there was no legal basis for filing the motion.** . . . Therefore, because plaintiff's counsel filed the Motion for Sanctions without a legal basis for doing so, and **because he failed to comply with this Court's local rules, which would have presumably prevented the filing of this clearly frivolous motion and avoided the need for the defendants' counsel to expend the time and effort to respond to it, the Court found that it was appropriate to impose [monetary] sanctions on plaintiff's counsel** so that the defendants can be reimbursed for the costs associated with the preparation and filing of the opposition.

Sokos, 283 F. Supp. 2d at 55 (emphasis added). Hence, Judge Walton imposed monetary sanctions on plaintiff's counsel, awarding defendants the attorneys' fees and costs incurred in responding to the motion in question. Id.

Similarly, Judge Lamberth explained that this Rule is designed to allow the parties to resolve, or at least narrow, the disputed issues before seeking judicial intervention:

> **The entire purpose of the meet-and-confer rule is** to force litigants to attempt to resolve, or at least narrow, the disputed issues **to prevent the unnecessary waste of time and effort on any given motion.** The purpose of the rule is not to simply determine whether the motion will be opposed.

Alexander, 186 F.R.D. at 199 (emphasis added) (applying former Local Rule 108(m), the predecessor to LCvR 7.1(m)). Thus, Judge Lamberth explained that the failure to comply with this Rule was unjustifiable:

> Plaintiffs' counsel should take great care to ensure that Local Rule [7.1(m)] does not become an issue again. There can be no substantial justification for filing a nondispositive motion in the manner described in this opinion or in any other way that clearly violates the local rules of this court.

Id. This Court should similarly find that plaintiff's counsel's failure to make any attempt to comply with Rule 7.1(m) before filing the motion to disqualify was unjustified, and warrants

3

denial or striking of the motion, and imposition of monetary sanctions on plaintiff's counsel.[2]

## II. The Motion to Disqualify is Based on Factual Misrepresentations, Since There Was No Attorney-Client Relationship Between Plaintiff and Defendants' Attorney With Respect to the Subject Matter of This Litigation.

This Court must further find that plaintiff's motion to disqualify must be denied, because there never was any attorney-client relationship between plaintiff, and defendant's counsel (Lynne Bernabei), as plaintiff now alleges. Plaintiff's motion is based on a lengthy affidavit that purports to claim that there was an attorney-client relationship between Ms. Bernabei and himself. In fact, as set forth below, Ms. Bernabei repeatedly told plaintiff that she could not provide him legal advice and was not his attorney. Further, had plaintiff's counsel attempted to discuss its proposed motion to disqualify with defendants' counsel, as required under Rule 7.1(m), plaintiff would have learned that there was no factual or legal basis for his motion.

### A. The Nature and Substance of Plaintiff's Communications With Defendants' Counsel Did Not Create an Attorney-Client Relationship.

Ms. Bernabei has known defendant Lou Wolf, and his spouse, for at least twenty years, and has made routine visits to Mr. Wolf's home. See Bernabei Aff., at ¶ 7. Ms. Bernabei has met some of Covert Action's contractors and employees, either at social events or in Mr. Wolf's home. Id. at ¶ 8. From time to time, Ms. Bernabei has provided legal advice to Mr. Wolf and Covert Action, most recently in the present litigation. Id.

In or around 1992, Habib Ghraib, whom Ms. Bernabei now understands is the "John

---

[2] The timing of plaintiff's motion is also questionable. Undersigned counsel entered an appearance on October 13, 2006. Yet, plaintiff waited until <u>after</u> defendants filed their motion to dismiss before filing the motion to disqualify. Clearly, plaintiff knew of the representation for nearly four weeks, yet waited until after defense counsel had expended considerable time and effort to argue that plaintiff's claims were unsubstantiated and legally frivolous, and that this Court did not have jurisdiction over plaintiff's claims.

Doe" plaintiff in this litigation, told her about some problems he was having with his immigration status.[3] Id. at ¶ 9. Ms. Bernabei told him that she was not an immigration lawyer, and referred him to an attorney who specializes in that field. While Ms. Bernabei tried to explain to Mr. Ghraib what he needed to do in order to explain his situation to an immigration lawyer, she did not receive any privileged information from him and did nothing beyond the referral. Id. Most importantly, Ms. Bernabei did not provide any legal advice to Mr. Ghraib concerning his immigration status. Id. Further, Mr. Ghraib's immigration status is not an issue in this litigation. Thus, plaintiff's assertion regarding this communication, i.e., that he "sought" "legal advice" concerning "my visa problems," see Doe Aff., at ¶ 2, is factually incorrect and misrepresents to this Court the actual substance and content of their communications regarding plaintiff's immigration status.

Several times over the ensuing decade, when Ms. Bernabei ran into Mr. Ghraib, either at Mr. Wolf's home, or at social events, or the one or two times that Mr. Ghraib came to her office about Covert Action matters, Mr. Ghraib attempted to tell her about alleged problems with his employment at Covert Action. See Bernabei Aff. at ¶ 10. Ms. Bernabei told him something to the effect that "I cannot talk with you about that" because of her relationship with Mr. Wolf, and that "You will need to talk to Lou [Wolf] if you have issues with your employment." Id. At one point, Mr. Ghraib did ask if Ms. Bernabei would keep what he told her "confidential," and she only said that she "would not talk to Lou and Dolores," but reiterated that she was Covert Action's attorney. Id. Finally, and most importantly, Ms. Bernabei did not provide any legal

---

[3] Although Ms. Bernabei knows that plaintiff used the name "Habib" while working at Covert Action, she does not know whether that is, in fact, his legal name. See Bernabei Aff., at ¶ 9.

advice to Mr. Ghraib concerning his alleged problems with his employment. Id. at ¶¶ 11-12.[4]

Thus, plaintiff's assertion that "in all of my meetings or conversations . . . she stated emphatically [that] our conversations and meetings were protected by the attorney-client privilege," see Doe Aff., at ¶ 8, fundamentally misrepresents to this Court the nature of plaintiff's communications with Ms. Bernabei regarding his employment by defendants. See Bernabei Aff., at ¶¶ 9-12. In particular, Ms. Bernabei never told him that their communications were privileged, never told him that they had an attorney-client relationship, and never provided him with legal advice. Id. Further, plaintiff did not meet or speak with Ms. Bernabei on "numerous times," see Doe Aff., at ¶¶ 3-5, but came to her office on one or two times, in order to provide her with information about Covert Action matters to assist her in her representation of Mr. Wolf or the magazine. On none of these occasions did she ever tell him that she was serving as his attorney. See Bernabei Aff., at ¶ 11.

### B.     Plaintiff's Motion to Disqualify Does Not Satisfy the Heightened Requirements for Disqualifying Defendants' Counsel.

This Court must find, as a matter of law, that plaintiff's communications with Ms. Bernabei do not create a conflict of interest on her part, and that plaintiff has not satisfied the requirements for disqualifying defendants' counsel. Although plaintiff's legal arguments are amorphous and unclear, plaintiff has failed to show that there was a "substantial relationship" between plaintiff's prior communications (whatever they were) and this litigation, as required under Laker Airways, Ltd. v. Pan American World Airways, 103 F.R.D. 22, 44 (D.D.C. 1984).

---

[4] Further, as plaintiff admits, his communications with Ms. Bernabei ceased in 2003. See Doe Aff., at ¶¶ 3-5, 8. As set forth in defendants' motion to dismiss, the three-year statute of limitations, D.C. Code Ann. § 12-301(7), bars plaintiff's claims as to conduct that occurred prior to September 19, 2003. See Def. Mot. (Nov. 8, 2006), at 7-9.

As a threshold matter, the courts have recognized that motions to disqualify are misused as strategic weapons, unsupported by the facts of the underlying litigation. Hence, Judge Harold Greene, in Laker Airways – a case relied upon by plaintiff – stated that:

> Disqualification motions "have become increasingly popular 'tools of the litigation process, being used ... for purely strategic purposes.'" . . . Accordingly, courts have in recent years become more and more skeptical of motions to disqualify counsel, and they now approach them with cautious scrutiny.

Id. at 28 (citations omitted). Judge Greene further explained that:

> It is, finally, appropriate to consider this motion in the context in which it has been filed. As noted above, courts have become increasingly aware that **some motions for disqualification are motivated** not by a fine sense of ethics and a well-developed desire to remove from litigation practitioners whose ethics are less acute, but, bluntly, **by a desire to achieve a tactical advantage**. . . .
>
> This case, in brief, is a textbook example of the kind of misuse of the disqualification standards for tactical litigation advantage of which courts have become increasingly aware and wary. . . .
>
> [This Court's] responsibility with respect to the supervision of its bar is not limited to the disqualification of attorneys for violations of the Code of Professional Responsibility; it also includes **the rejection of efforts to abuse the Code through motions to disqualify which lack substantive merit and represent means to harass the opposing party.**

Id. at 41-42 (emphasis added). In Laker Airways, after discussing the extensive alleged involvement with defendants by the attorney whose disqualification was being sought (while he was a government attorney), Judge Greene found that this involvement did not rise to the level of creating a conflict of interest. Id. at 41. In fact, he recognized that the moving parties' arguments were nothing but a smoke screen:

> On the basis of these efforts, they then provided the Court with a roll of activities which allegedly bar him, and all associated counsel, from representing [Laker Airways] in this case. This broad, wide-ranging and scattershot effort is undoubtedly designed to persuade the Court that where there is this much smoke there must be some fire. Yet, when the various claims are analyzed in detail, it

7

becomes clear that there is no fire--there is only smoke.

Id. at 41.

In Laker Airways, Judge Greene carefully explained that an attorney could only be disqualified if there was "a true conflict of interest." Id. at 28. Here, as in Laker Airways, there is no such conflict of interest. Ms. Bernabei did not receive privileged information from plaintiff with respect to his claims in this litigation, and did not provide plaintiff with any legal advice. See Bernabei Aff. at ¶¶ 9-12. Critically, Ms. Bernabei explained to plaintiff that she could not serve as his attorney, and that he would have to talk to Mr. Wolf if he had concerns about his employment. Id. at ¶ 10. Nor did she ever tell plaintiff, or agree with him, that their communications were protected under the attorney-client privilege, as she was not serving as his attorney. Id. at ¶¶ 10–11. Most importantly, she never told him she would represent him against Mr. Wolf and Covert Action. In fact, she told him the opposite -- she could not provide representation to him for his problems. Id. at ¶ 10.

Thus, the facts of plaintiff's communications with Ms. Bernabei are precisely the opposite from those in the other two cases relied upon by plaintiff, in which the courts found that an attorney initially provided legal advice to one party, and then represented the opposing party when the first party raised legal claims. See Pls. Mot. at 5-8 (citing Westinghouse Electric Corp. v. Gulf Oil Corp., 588 F.2d 221, 225 (7th Cir. 1978); Consolidated Theatres, Inc. v. Warner Brothers Pictures, Inc., 113 F. Supp. 265, 268-69 (S.D.N.Y. 1953)).

In Consolidated Theatres, the court found that there was a conflict where the plaintiff's attorney (Cooke) was (1) retained by defendants in prior litigation involving similar claims; (2) drafted appellate briefs, appeared at court hearings, and argued the Supreme Court appeal, all on

defendant's behalf; and (3) after the Supreme Court's decision, drafted a proposed petition for rehearing and worked on the order of mandate. Consolidated Theatres, 113 F. Supp. at 266-67. Similarly, in Westinghouse, the court found that the law firm for one defendant (United Nuclear) had previously worked as the attorney for the other defendant (Gulf), where the co-defendants had adverse interests as United Nuclear was trying to exculpate itself by inculpating Gulf. Westinghouse, 588 F.2d at 223. In that case, the law firm was (1) retained by Gulf for five years; (2) "performed numerous services for Gulf," including patenting mining claims, drafting leases, representing Gulf in litigation, and lobbying on behalf of Gulf, all to the extent that one partner "alone spent over 2,000 hours working on behalf of Gulf." Id. Given this extensive work performed by the law firm on behalf of Gulf, which was sufficiently related to the Westinghouse litigation, the Seventh Circuit found that disqualification of that firm was warranted. Id.

Here, in contrast, Ms. Bernabei was never retained by plaintiff, provided him with no legal advice, performed no legal services on his behalf, and expressly denied that she was his attorney when he told her about his alleged problems with Mr. Wolf and Covert Action. See Bernabei Aff., at ¶¶ 10-12. Thus, the facts of this litigation come nowhere near the threshold at which other courts have considered whether to disqualify an attorney based on the attorney's prior representation of the opposing party. The D.C. Court of Appeals' decision in Derrickson is on point. Derrickson arose out of an ex-wife's attempt to increase alimony payments eight years after a divorce. The wife hired an attorney (Sandground) who, coincidentally, had a one-hour consultation with the husband at the time of the divorce, eight years previously. The husband sought to disqualify Sandground from representing the wife in this post-divorce litigation.

Derrickson v. Derrickson, 541 A.2d 149, 150-51 (D.C. 1988). The Court found that it was reversible error to grant the husband's motion to disqualify the attorney, since the husband "did not request Mr. Sandground to do any legal work for him." Id. at 153. Further, "while the fact that no fee was paid does not negate the existence of an attorney-client relationship, it does add support to our conclusion." Id. Here, as in Derrickson, Mr. Ghraib paid no fee to Ms. Bernabei, and he did not request that she do any legal work for him. See Bernabei Aff., at ¶ 12.

Plaintiff's reliance on two other decisions of the D.C. Court of Appeals, see Pls. Mot. at 10 (citing *In re* Russell, 424 A.2d 1087 (D.C. 1980) (per curiam) and *In re* Fogel, 422 A.2d 966 (D.C. 1980) (per curiam)), is misplaced. Both Russell and Fogel concerned attorneys who undertook to represent individuals with respect to their legal claims, took initial legal steps (such as filing a complaint or commencing settlement negotiations) on their behalf, but thereafter neglected their clients' claims and ceased communicating with their clients. *In re* Russell, 424 A.2d at 1087-89; *In re* Fogel, 422 A.2d at 966-67. Here, in contrast, Ms. Bernabei never undertook to represent Mr. Ghraib with respect to his alleged legal claims, and took no legal steps on his behalf. See Bernabei Aff., at ¶¶ 10-12. Nor did Mr. Ghraib ever retain Ms. Bernabei or any other attorney in her current or former firm. Id. at ¶ 12.

More generally, plaintiff's communications with Ms. Bernabei were no different from those between the employee of an corporate entity and the entity's in-house or outside counsel, when the employee raises concerns about the terms and conditions of his employment. It is unquestionable that the attorney for an entity is not disqualified from representing the entity merely because an employee attempted to raise concerns with the entity's counsel. It would frustrate the purposes of the attorney-client relationship between an entity and its attorney to

10

allow any person with an alleged claim against the entity to disqualify the attorney on the flimsy basis that the person had initially raised his concerns with the attorney. Instead, it is routine that even after a current or former employee or contractor has complained to the entity's attorney, that the attorney will then vigorously defend the entity against those alleged claims.

### III.  Conclusion.

This Court must deny plaintiff's legally and factually unsupportable motion to disqualify, and should impose sanctions on plaintiff for failing to comply with Rule 7.1(m), since plaintiff's counsel's conduct has needlessly burdened this Court and defendants with a frivolous motion.

Respectfully submitted,

/s/ Lynne Bernabei

_____
Lynne Bernabei, Esquire     # 938936
Alan R. Kabat, Esquire      # 464258
The Bernabei Law Firm, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7124
tel. (202) 745-1942
fax (202) 745-2627

Counsel for Defendants

Dated: November 15, 2006