IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE, </br></br>  Plaintiff, </br></br> v. </br></br> LOUIS WOLF, *et al.*, </br></br>  Defendants. | Civil Action No. 1:06-CV-01645 </br> Judge Richard J. Leon |

### AFFIDAVIT OF LYNNE BERNABEI

1. I, Lynne Bernabei, this 15th day of November 2006, declare and state as follows:

2. I am the lead attorney for the defendants in the above-captioned action, and am submitting this Affidavit in support of Defendants' Opposition to Plaintiff's Motion to Disqualify.

3. I am making this affidavit based on personal knowledge, and I am competent to testify to the matters stated below.

4. On October 13, 2006, my firm entered an appearance on behalf of all defendants. On November 7, 2006, my firm filed a motion to dismiss plaintiff's claims, pursuant to Rules 12(b)(6) and 12(b)(1), Fed. R. Civ. P.

5. At no time prior to the filing of plaintiff's Motion to Disqualify (Nov. 8, 2006), did plaintiff's counsel contact me, or my co-counsel, pursuant to Local Civil Rule 7.1(m), in order to discuss the anticipated motion in a good faith effort to narrow or eliminate the areas of disagreement. The first time that my firm learned of plaintiff's Motion was when we received the Electronic Case Filing notification on November 8, 2006, a day after my firm filed the defendants' Motion to Dismiss, and four weeks after we entered an appearance. If plaintiff's

counsel had contacted me prior to filing the Motion to Disqualify, I would have informed him that the factual predicates for plaintiff's motion were erroneous, so that there was no legal basis for plaintiff's arguments.

6.      I have read the "Affidavit of John Doe," submitted as an exhibit to plaintiff's Motion to Disqualify. The factual statements in plaintiff's affidavit are inaccurate and misleading. In this Affidavit, I describe the nature of my contacts with plaintiff over the last ten years.

7.      I have known defendant Lou Wolf, and his spouse, Dolores, for at least twenty years. I have made routine visits to their home during that period, and have met them at social events, including events related to Covert Action.

8.      I have represented Mr. Wolf and Covert Action, a news magazine, over the last eight years. I have met some of Covert Action's contractors and employees at Mr. Wolf's home, or at social events related to the magazine. I have provided legal advice to Mr. Wolf and to Covert Action on various matters, and currently represent them in this litigation.

9.      Sometime in or around 1992, an employee or contractor of Covert Action, whom I initially knew as "Habib," told me about some problems he was having with his immigration status. I do not know whether that was his legal name. I told Habib that I was not an immigration lawyer, and referred him to another attorney who specializes in that field. I tried to tell Habib how best to explain his situation to the immigration lawyer, but he did not tell me any privileged information, and I did nothing further for him, other than the referral. I did not provide him with any legal advice, nor could I, since I am not an immigration lawyer.

10.     Over the next decade, I encountered Habib on several occasions, either at Mr.

Wolf's home, or at social events, or the one or two times that he came to my office to discuss Covert Action matters. At one or two of these meetings, Habib tried to tell me about problems he claimed he was having at Covert Action. I told him to the effect that "I cannot talk with you about that" because of my prior relationship with Mr. Wolf and his wife. I told him that "You will need to talk to Lou if you have issues with your employment." Habib once asked me if I would keep what he told me "confidential," and I told him that I "would not talk to Lou and Dolores," but made it clear that I was Covert Action's attorney and Lou's attorney. I never told Habib that I would represent against Mr. Wolf and Covert Action. In fact, I told him the exact opposite -- that I could not provide representation to him with respect to his alleged problems.

11. At none of these meetings or encounters with Habib did I provide any legal advice to Habib regarding his employment. I never told him that our communications were privileged. I never told him that we had an attorney-client privilege. Habib did not meet or speak with me on "numerous times" as he claims, see Doe Aff., at ¶¶ 3-5, since he only came to my office on one or two times, as part of my representation of Covert Action in other legal matters. Habib's visits to my office were made in order to provide me with information about certain issues concerning Covert Action, to assist me in my representation of Mr. Wolf or the magazine.

12. Habib never paid any legal fee or consulting fee to me, nor did I charge him any fees, since I was not providing any legal services or advice to him. Habib never requested that I do any legal work on his behalf. A search of our firm's and my former firm's files show that the plaintiff never retained either one of my firms, or any lawyer in my current or former firm.

I declare this 15th day of November 2006, subject to the pain and penalty of perjury,

3

that the foregoing is true and correct to the best of my knowledge.

_____
LYNNE BERNABEI

Subscribed and sworn to before me,
this _15_ day of November, 2006

_____
Notary Public

My commission expires __My Commission Expires June 30, 2010__

4