UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE | ) |
| | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 1:06-CV-01645 |
| v. | ) Judge Richard J. Leon |
| | ) |
| LOUIS WOLF, | ) |
| COVERT ACTION PUBLICATIONS, INC. | ) |
| | ) |
| Defendants. | ) |
| | ) |

# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

John M. Green, (#476592)
GILMAN & ASSOCIATES
600 Pennsylvania Ave, SE, Suite 410
Washington, D.C. 20003
(202) 547-9080

Attorney for Plaintiff

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** .................................. 3

**ARGUEMENT** ............................................. 10

Counts I and II Breach of Expressed Contract................. 15

V Breach of Implied Contract............................... 16

VI Breach of Implied Contract............................. 17

Counts VII – IX- Promissory Estoppel...................... 18

Count X – Conversion...................................... 18

Counts XI – XII Quasi-Contract............................ 19

Count XIII – Punitive Damages – Louis Wolf................ 19

Count XIV – Slander – Covert Action Publication............ 19

Count XV – Intentional Infliction of Emotional Distress...... 20

Subject Matter Jurisdiction................................ 21

Suretyship................................................ 21

Dismissal pursuant to Rule 12(b)(6)........................ 21

Dismissal of Plaintiff's Complaint With Prejudice............ 21

**CONCLUSION** ........................................... 22

## TABLE OF AUTHORITIES

**Cases**

**Conley** ...................................................... 11

**Conley v. Gibson**, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99
(1957) ...................................................... 10

**Davis v. Winfield**, 664 A.2d 836, 838 (D.C. 1995) ............. 13

DeGrazia v. Anderson, D.C.Mun.App., 62 A.2d 194 (1948) ........ 13

**Diatz v. Washington Technical School, Inc.**, D.C.Mun.App., 73
A.2d 227, rehearing denied, 73 A.2d 718 (1950).............. 13

**Edmund J. Flynn Co. v. LaVay**, 431 A.2d 543, 547 (D.C. 1981) ... 13

**Firestone v. Firestone**, 316 U.S. App. D.C. 152, 76 F.3d 1205,
1209 (D.C. Cir. 1996)...................................... 21

**Heather Cottin v. Louis Wolf, et al** ............................ 3

**Hishon v. King & Spalding**, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104
S. Ct. 2229 (1984)......................................... 11

**Jack Baker, Inc. v. Office Space Dev. Corp.**, 664 A.2d 1236, 1238
(D.C. 1995)................................................ 13

**Leatherman v. Tarrant County Narcotics Intelligence and
Coordination Unit**, 507 U.S. 163, 168-169, 122 L. Ed. 2d 517,
113 S. Ct. 1160 (1993)..................................... 10

**Mars v. Spanos**, 78 U.S.App.D.C. 230, 139 F.2d 369 (1943) ...... 13

**Nofziger Communications, Inc. v. Birks**, 300 U.S. App. D.C. 355,
989 F.2d 1227, 1230 (D.C. Cir. 1993)....................... 13

**Sobel v. Diatz**, 88 U.S.App.D.C. 329, 189 F.2d 26 (1951) ....... 13

**Townsend v. Vanderwerker**, 160 U.S. 171, 40 L. Ed. 383, 16 S. Ct.

258 (1895) ................................................... 13

**United States v. Cannon**, 206 U.S. App. D.C. 405, 642 F.2d 1373, 1385 (D.C. Cir. 1981) (quotation deleted), cert. denied, 455 U.S. 999, 71 L. Ed. 2d 865, 102 S. Ct. 1630 (1982) .......... 10

**Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.**, 382 U.S. 172, 174-175 (1965) ........................ 12

## Statutes

**FED. R. CIV. P. 9(b)** ........................................ 10

**United States v. Cannon**, 206 U.S. App. D.C. 405, 642 F.2d 1373, 1385 (D.C. Cir. 1981) (quotation deleted), cert. denied, 455 U.S. 999, 71 L. Ed. 2d 865, 102 S. Ct. 1630 (1982) .......... 10

## Treatises

**5 C. Wright & A. Miller, Federal Practice and Procedure** § 1202, p. 76 (2d ed. 1990) ........................................ 11

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **JOHN DOE** | ) |
| | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 1:06-CV-01645 |
| v. | ) Judge Richard J. Leon |
| | ) |
| **LOUIS WOLF,** | ) |
| **COVERT ACTION PUBLICATIONS, INC.** | ) |
| | ) |
| Defendants. | ) |
| | ) |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### PRELIMINARY STATEMENT

Plaintiff John Doe, by and through his undersigned counsel, respectfully submit this Memorandum of Law in Support of his Motion in Opposition to Defendants' Motion to Dismiss under Fed.R.Civ.Pro.7(b)(1,Fed.R.Civ.Pro.12(b)(1),and Fed.R.Civ.Pro.12(b)(6). Plaintiff is responding in opposition to defendants' motion on his claims for Counts I and II Breach of Expressed Contract, that the Statute of Limitations and Fraud applies to a number of the plaintiff's claims, Counts V and VI Breach of Implied Contract, Counts VII and IX Promissory Estoppel, Count IX – Conversion, Count X and XI Breach of Quasi-Contract, Count XII Punitive Damages, Count XIII Covert Actions, Count XIV – Intentional Infliction of Emotional Distress, and Subject Matter Jurisdiction.

The plaintiff is not going to respond to any of the unsupported characterizations alleged in the defendants motion, instead the plaintiff will focus on the issues before this Honorable Court.   The defendants in their Motion to Dismiss refers to a complaint filed in D.C. Superior Court, **Heather Cottin v. Louis Wolf, et al**, Civil Action No. 05 CA 004952 in which the plaintiff was not a party, Defendants' Exhibit 1 plaintiff's Attachment A.   The plaintiff was concerned about being called to testify by the parties so he sought to protect his identity and where he resided.   As delineated in the plaintiff's Motion to Proceed in Pseudonym the plaintiff was concerned about harm to himself and his family if the Iranian Government became aware of his location.   The **Heather Cottin** complaint was a battle between two (2) Covert Action Publication Boards for control of Covert Action Publication, Inc. and its continued viability as a magazine.   In addition, Covert Action Publication Board Member and Treasurer Heather Cottin in her complaint sought to correct the wrongs and injustices, that she was aware of, to the plaintiff John Doe and others caused by Louis Wolf the individual; Louis Wolf, President of Covert Action Publication; Louis Wolf, Covert Action Publication Board Member; and Covert Actions Publications.

Prior to a hearing on the merits of Ms. Cottin's claims she moved for a Temporary Restraining Order and the Court Denied her

request because she was unable to prove "irreparable harm going to happen." The Court also denied the defendants' request to dismiss plaintiff Cottin's Complaint with prejudice. See Attachment B Transcript of the Hearing before the Honorable Ronald Wertheim on July 25, 2005. A few days later Ms. Cottin moved for an injunction but the District of Columbia Court denied her request because Ms. Cottin was unable to meet the three factors. The Court denied the defendants' request to dismiss plaintiff Cottin's Complaint because it had not ripen yet. See Attachment C Transcript of the Hearing before the Honorable Patricia A. Broderick on July 29, 2005.

The defendant denies that his complaint is a reprise of the **Cottin** Complaint. If anything the **Cottin** Complaint is an example of a Covert Action Publications Board Member attempting to correct Covert Action Publications failure to pay the defendant John Doe back wages and wages he was due. Heather Cottin Treasurer and Board Member of Covert Actions Publications Admits in her Complaint in Paragraph 4 that the Managing Editor was fired. The Managing Editor was John Doe. Ms. Cottin in Paragraph 6 admits that Covert Actions Publications had "failed and refused to pay the editor (John Doe) his full salary and benefits owed him (John Doe) for 15 years, despite numerous assertions and promissory note … that he would be paid." See also admissions in paragraphs titled Harassment, Cottin

Complaint page 4, and Breach of Contract Complaint page 5.
The defendants did file an opposition to the plaintiff's
preliminary injunction, and a motion to dismiss the plaintiff
Cottin's complaint.   The Court should note that the defendants
did not attach a copy of either of their motions.    This Court
should also note that the defendants did not inform the court
that the defendants filed an Opposition to the Plaintiff's
Motion for Temporary Restraining Order.   The Court  should ask
why did the defendants failed to attach a copy of their
opposition to the plaintiff's preliminary injunction, or a copy
of their motion to dismiss Cottin's complaint, or mention that
the defendants filed an Opposition to the Plaintiff's Motion for
a Temporary Restraining Order.

   At this time plaintiff John Doe would like to introduce the
Court to the Defendants' Opposition to the Plaintiff's Motion
for Temporary Restraining Order, Attachment D.   Attorneys Lynne
Bernabi  and Ari M. Wilkenfeld were the attorneys of record, see
page 29 of the Defendants' Opposition to the Plaintiff's Motion
for Temporary Restraining Order.   It is reasonable to assume
that Attorney Lynne Bernabi knew or should have known of the
admissions in the Defendants' Opposition to the Plaintiff's
Motion for Temporary Restraining Order.   These admissions were
made by defendant Louis Wolf (Declaration of Louis Wolf, Exhibit
1),  and Covert Actions Board Member Philip Wheaton (Declaration

of Philip Wheaton Exhibit 2). The aforementioned admissions
support most of the allegations in John Doe's Complaint.
Starting with the last paragraph on page 5 of the Defendants'
Opposition to the Plaintiff's Motion for Temporary Restraining
Order the defendants admit that defendant worked for Covert
Actions Publications, hereafter, CAP, from 1991 to 2005. The
defendants claim that defendant John Doe provided voluntary and
staff services to CAP during the 1991 to 2005 period. The
plaintiff John Doe denies that his services were understood to
be voluntary. The defendants admit that payments were made to
defendant John Doe, which totaled $27,000.00, last paragraph on
page 5 of the Defendants' Opposition to the Plaintiff's Motion
for Temporary Restraining Order. The plaintiff denies that he
ever said that the Magazine was "even " with him regarding his
back pay, an issue for discovery. On page 6, the Magazine
admits it agreed to pay John Doe $24,000.00, and states that it
did pay the defendant $24,000. Plaintiff John Doe claims that
he never received the $24,000. The defendants in the second
paragraph on Page 6 admit that beginning the fall of 2002
defendant John Doe (Habib) claimed that he was owed $60,000 to
$200,000 and effort were made to resolve the dispute. Reading
page 6 and 7 it is clear that the defendants and the plaintiff
continued their efforts to resolve the back pay issue from 2002
through 2004. Clearly the defendants and the plaintiff believed

7

that there was an back pay issue that needed to be resolved. The back pay was obviously for work fully performed by John Doe. The plaintiff believes that discovery would allow him to obtain admissible evidence to support his back pay claims. Pages 9-10 state that the plaintiff destroyed CAP property and forged CAP checks an allegation that the plaintiff denies. On page 13, the defendants admit that on June 17, 2005 the CAP Board agreed to, "terminate all contractual and financial and financial relationships with plaintiff John Doe (Habib) and Giang Tran." It is important to note that neither the plaintiff John Doe (Habib) or Giang Tranhad signed an employment contract with CAP, but CAP admits that CAP had both a contractual and financial relationships with plaintiff John Doe (Habib) and Giang Tran. Furthermore, John Doe believes that discovery will provide admissible evidence that during the 1991 to 2005 period CAP only had one (1) signed employment contract and that was with Richard Ray, and as a normal course of business all of CAP's employment contracts with its employees were oral. The defendants have already admitted that Richard Ray was the only employee with a signed employment contract. See Attachment D.

Defendants' Opposition to the Plaintiff's Motion for Temporary Restraining Order Exhibit 1 the Declaration of Louis Wolf dated July 19, 2005. In paragraph 7 Louis Wolf admits that plaintiff John Doe (Habib) was "the Magazine's Editor."

8

In paragraph 11 Louis Wolf Admits that defendant John Doe (Habib) worked for the CAP from 1991 to 2005. In the same paragraph Louis Wolf admits that CAP paid the plaintiff John Doe $27,000 in 2001. In paragraph 12 Louis wolf admits that there was a pay dispute between CAP and the defendant John Doe. The amount disputed was either $60,000, or $150.000, or $200,000. The plaintiff believes that discovery will allow him to obtain admissible evidence that will fix the amount of back pay due with some certainty. In paragraph 13 Louis Wolf admits that CAP Board Member Philip Wheaton was attempting to mediate the back pay dispute with the plaintiff John Doe (Habib). See also the included comments of CAP Board Member and Treasurer Heather Cottin. In paragraph 21 defendant Louis Wolf admits that on June 17, 2005 the CAP Board agreed to, "terminate all contractual and financial and financial relationships with plaintiff John Doe (Habib) and Giang Tran." It is important to note that neither the plaintiff John Doe (Habib) or Giang Tranhad signed employment contracts with CAP, but CAP admitted that CAP had both a contractual and financial relationships with plaintiff John Doe (Habib) and Giang Tran. Furthermore, discovery will provide admissible evidence that during the 1991 to 2005 period CAP only had one (1) signed employment contract and that was with Richard Ray and as a normal course of business all of CAP's employment contracts with its employees were oral.

9

See the last page of the Louis Wolf Declaration for his signature.

Defendants' Opposition to the Plaintiff's Motion for Temporary Restraining Order Exhibit 2 the Declaration of Philip Wheaton dated July 19, 2005. In paragraph 5 Philip Wheaton admits that a man named Habib (John Doe) provided voluntary service and staff assistance to the various editors of the Magazine (CAP). The plaintiff denies that he provided any significant voluntary services to CAP. In paragraph 7 of the Louis Wolf Declaration Louis Wolf admits that plaintiff John Doe (Habib) was "the Magazine's Editor." In paragraph 10 Philip Wheaton admits that there was a debt owed the plaintiff John Doe (Habib).

See the last page of the Philip Wheaton Declaration for his signature.

The plaintiff believes that the allegations in his complaint satisfy the "notice pleading" requirements of Fed.R.Civ.Pro.8 and 9., and that none of the allegations are susceptible to dismissal by either the statute of Frauds or Limitations, and for the foregoing reasons the defendants motion to dismiss should be denied.

**ARGUEMENT**

10

Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Such a statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." **Conley v. Gibson**, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. See id. at 47-48; **Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit**, 507 U.S. 163, 168-169, 122 L. Ed. 2d 517, 113 S. Ct. 1160 (1993). Rule 9(b) also requires that "in all averments of fraud or mistake, the circumstances constituting fraud ... shall be stated with particularity." **FED. R. CIV. P. 9(b)**. Reading these two provisions in conjunction "normally ... means that the pleader must state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." **United States v. Cannon**, 206 U.S. App. D.C. 405, 642 F.2d 1373, 1385 (D.C. Cir. 1981) (quotation deleted), cert. denied, 455 U.S. 999, 71 L. Ed. 2d 865, 102 S. Ct. 1630 (1982).

"The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so

effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court." **5 C. Wright & A. Miller, Federal Practice and Procedure** § 1202, p. 76 (2d ed. 1990). Other provisions of the Federal Rules of Civil Procedure are inextricably linked to Rule 8(a)'s simplified notice pleading standard. Rule 8(e)(1) states that "no technical forms of pleading or motions are required," and Rule 8(f) provides that "all pleadings shall be so construed as to do substantial justice." Given the Federal Rules' simplified standard for pleading, "[a] court may dismiss a complaint via Rule 12(b) only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." **Hishon v. King & Spalding**, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984).

If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding. Moreover, claims lacking merit may be dealt with through summary judgment under Rule 56. The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim. **See Conley**, supra, at 48 ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel

12

may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits"). When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.

For the purposes of a motion to dismiss, the material allegations of the complaint are taken as admitted. **See**, e. g., **Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.**, 382 U.S. 172, 174-175 (1965). And, the complaint  is to be liberally construed in favor of plaintiff. See Fed. Rule Civ. Proc. 8 (f); **Conley v. Gibson**, 355 U.S. 41 (1957). The complaint should not be dismissed unless it appears that appellant could "prove no set of facts in support of his claim which would entitle him to relief." **Conley v. Gibson**, supra, at 45-46.

13

Under District of Columbia law, the party asserting the existence of an enforceable contract has the burden of proving that there has been agreement--a "meeting of the minds"--as to all material terms. **See Jack Baker, Inc. v. Office Space Dev. Corp.**, 664 A.2d 1236, 1238 (D.C. 1995); **Davis v. Winfield**, 664 A.2d 836, 838 (D.C. 1995). "Where the parties fail to agree to all material terms, no contract is formed...." Jack Baker, 664 A.2d at 1239; see **Edmund J. Flynn Co. v. LaVay**, 431 A.2d 543, 547 (D.C. 1981). Proof of a meeting of the minds may be found either in the written agreement or, if the agreement is ambiguous, in the parties' actions at the time of contract formation. **See Davis**, 664 A.2d at 838; **Nofziger Communications, Inc. v. Birks**, 300 U.S. App. D.C. 355, 989 F.2d 1227, 1230 (D.C. Cir. 1993).

Partial or complete performance under an oral contract may remove a case from the applicability of the statute.   E.g., **Townsend v. Vanderwerker**, 160 U.S. 171, 40 L. Ed. 383, 16 S. Ct. 258 (1895); **Mars v. Spanos**, 78 U.S.App.D.C. 230, 139 F.2d 369 (1943); **Diatz v. Washington Technical School, Inc.**, D.C.Mun.App., 73 A.2d 227, rehearing denied, 73 A.2d 718 (1950), **aff'd** sub nom. **Sobel v. Diatz**, 88 U.S.App.D.C. 329, 189 F.2d 26 (1951). In DeGrazia v. Anderson, D.C.Mun.App., 62 A.2d 194 (1948), it was stated (at 195):" The statute of frauds, D.C. Code Ann. § 28-3502 (1991), bars the enforcement of an oral

14

contract that cannot by its terms be performed within one year. However, an exception to this statute is when partial or complete performance has occurred."

With these rules in mind, lets turn to an examination of the allegations of defendant John Doe's complaint.

Counts I and II Breach of Expressed Contract

Count I against defendant Louis Wolf – See Attachment E – Memo # 4: Payment to Habib for his Editorial Work. The memo is from Philip E. Wheaton For the Board of Directors. The memo covers two periods of time. Period 1 from 1990 to 1998, and period 2 after 2001. The memo speaks of the "great injustice" to John Doe that everyone was aware of including defendant Louis Wolf. The memo makes it clear that Louis Wolf was responsible for the debt to plaintiff John Doe from 1990 to 1998. That debt could only be the result of a contract between the defendant Louis Wolf and John Doe, a contract that John Doe fully performed. The full performance of John Doe takes this contract out of the Statute of Frauds. See Attachment F The Affidavit of John Doe.

Count II against defendant Covert Actions Publications – Referring to Attachments E and F.   The memo and John Doe's Affidavit confirms full time employment for the plaintiff John with a salary equal to Richard Ray starting January 2002 and an implication that an amount was agreed upon for the defendants

labor. See plaintiff John Doe's Allegation number 27. The Covert Action Publication admits that there was a contract with John Doe and his salary was equal to Richard Ray's salary. See Attachments E and F.  The Cover Action Board also admits that Habib (John Doe) was being paid only a pittance yet he was the one person keeping the Magazine going.  Since the Board has admitted that the Covert Action Publication is only paying John Doe a pittance it is clear that he is not being paid.  In addition, Louis Wolf told the Covert Action Board of Directors that John Doe had lifetime employment with Covert Action Publication, See Attachment F.

As noted above, the Louis Wolf breached in the Fall of 2004 and Covert Actions Publications breached the contract in June 2005.  Plaintiff filed his complaint for damages on September 18, 2006 well with the three year Statute of Limitation requirement of D.C. § 12-301(7). Counts I and II are not barred by the Statute of Limitations or Fraud.  Furthermore, the plaintiff believes that both allegations in Count I and II meet the "notice" requirements of Rule 8 and 9.  The plaintiff's argument for Count II also applies to Count VI Breach of Implied Contract.

V Breach of Implied Contract

Breach of Implied Contract between Louis Wolf and John Doe. The contract between Louis Wolf and plaintiff John Doe was as

16

follows: defendant, Louis Wolf promised John Doe ten (10) years of full time paid employment as an Editor for Covert Actions, Publications, Inc. with full benefits if the defendant promised to help him reacquire Covert Actions, Publications, Inc. from the Co-founders William Schapp and Ellen Ray. John Doe helped defendant Louis Wolf reacquire Covert Actions, Publications, Inc. John Doe fully performed his part of the contract. John Doe's Full performance takes this contract out of the Statute of frauds and as noted above the Statute of Limitations do not apply to any of the plaintiff's allegations. Attachment E and F confirms the defendants pay starting January 2002. See also Attachments A and D for the John Doe's pay.

VI Breach of Implied Contract

Breach of Implied Contract between Covert Actions Publications and John Doe. Both Attachments D and E admit that John Doe worked from 1991 to 2005, Declarations of Louis Wolf and Philip Wheaton in Attachment D. Attachment E admits that Louis Wolf is responsible for John Doe's salary from 1990 to 1998. What is implied in Attachment E is that Covert Actions Publications was responsible for John Doe's Salary from 1999 until 2005 when John Doe was terminated. The admissions in the Declaration of Louis Wolf, Attachment D, confirm that Covert actions Publication had a contract with John Doe. Both Attachments D and E discuss the back pay due John Doe, and

17

Attachment E admit that John Doe is not receiving his full salary and he fully performed his contractual obligations. John Doe believes that discovery will allow him to obtain evidence to support this claim at trial.

Counts VII - IX- Promissory Estoppel

Referring to Attachment A, D, and E and admissions therein it is evident that plaintiff John Doe had contracts with both defendants and he fully performed each contract. The defendants own admissions should Estop defendants from claiming that no contract existed between themselves and the plaintiff, and shielding themselves with the Statute of frauds since the plaintiff fully performed each contract. As noted above, Louis Wolf breached in the Fall of 2004 and Covert Actions Publications breached in June 2005. The plaintiff filed his complaint for damages on September 18, 2006 well with the three year Statute of Limitation requirement of D.C. § 12-301(7), so the Statute of Limitation is not applicable to this or any other of the plaintiff's allegations. See also Attachment F.

Count X - Conversion

Referring to Attachment A, D, and E and admissions therein it is evident that plaintiff John Doe was not paid as such Covert Actions Publications did unlawfully exercise control over defendant John Doe's Work Product. The plaintiff is confident that discovery will confirm that Covert Action Publications did

18

not pay for the plaintiff's work products and ideas, which Covert Action Publications benefitted.

## Counts XI - XII Quasi-Contract

Referring to Attachment A, D, and E and admissions therein it is evident that plaintiff John Doe was not paid by Louis Wolf and/or Covert Actions Publications. Both Louis Wolf and Covert Actions Publications were unjustly enriched by John Doe's activities. John Doe was instrumental to Louis Wolf regaining control of Covert Actions Publications. Defendant Louis Wolf regaining control of Covert Action Publications is an enrichment. As the editor for Covert Action Publications, John Doe performed the activities listed in his allegation which increased the prestige and circulation of Covert Actions Publications enrichments.

## Count XIII - Punitive Damages - Louis Wolf

It is obvious from the plaintiff's allegation that the claims in which punitive damages would apply is the allegation for Intentional Infliction of Emotional Distress and/or Negligent Infliction of Emotional Distress. It is the plaintiff's belief that the punitive damage allegation gives defendant Louis Wolf notice that he is seeking punitive damages for the allegation for Intentional Infliction of Emotional Distress.

## Count XIV - Slander - Covert Action Publication

19

The document in question Attachment G, Defendants Exhibit 4, is a letter to a third party in which the defendant, CAP, through their agent Lynee Bernabei, accused both recently terminated employees plaintiff John Doe and Giang Tran of stealing CAP property.  Whether or not Attachment G amounts to Slander is an issue of fact.  The defendants cite a number of cases that provide a privilege to the attorney but none of these cases protect the defendant if the slanderous statement came from the defendant.  Furthermore, a brief review of the letter makes it clear that it would be almost impossible to prove in a civil or criminal court that either of the accused individuals is guilty of the alleged theft.  In addition, where is the police report? The Court should keep in mind the admissions in the **Cottin** complaint concerning the bullying of employees and falsely accusing them of theft. For all of the reasons set forth this allegation should not dismissed and the plaintiff be given the opportunity to obtain admissible evidence to support this allegation.

## Count XV – Intentional Infliction of Emotional Distress

Whether or not the conduct of the defendants or defendant rises to the level of Intentional Infliction of Emotional Distress is an issue of fact. Attachments A, D, and E indicate that discovery should result in admissible evidence at trial to support this allegation.

Subject Matter Jurisdiction

Reviewing the admissions contained in the **Cottin** Complaint (Attachment A), and Attachments D, E, and F along with plaintiff John Doe's full performance of his contracts with the defendants Louis Wolf and CAP it is more than evident that the plaintiff John Doe claims far exceed the $75,000 threshold.

Suretyship

Implied in the plaintiff's allegation and Attachments A, and D, is that Louis Wolf dominated the Covert Action Publication to an impermissible extent so that the debt at issue is not those of Covert Action Corporation, but belonged to Louis Wolf. The admissions in Attachment E confirms that the debt owed to John Doe from 1990 to 1998 is personal to defendant John Doe and under the circumstances, the **statute of frauds** provision on suretyship is wholly inapposite.

Dismissal pursuant to Rule 12(b)(6)

Dismissal pursuant to Rule 12(b)(6) would be inappropriate because the documents attached to this memo provide a basis for proving the facts of John Doe's Complaint. In addition, the defendants motion to dismiss is devoid of any evidence that would support this Court's dismissal of John Doe's Complaint pursuant to Rule 12(b)(6).

Dismissal of Plaintiff's Complaint With Prejudice

"The defendants have requested that this Court dismiss the plaintiff's complaint with prejudice. The standard for dismissing a complaint with prejudice is high: "dismissal with prejudice is warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." **Firestone v. Firestone**, 316 U.S. App. D.C. 152, 76 F.3d 1205, 1209 (D.C. Cir. 1996) Therefore, a complaint that omits certain essential facts and thus fails to state a claim warrants dismissal pursuant to **Rule 12(b)(6)** but not dismissal with prejudice. The plaintiff has satisfied the notice requirements, has demonstrated that the Statute of Frauds and Limitations do not apply, and John Doe has submitted documents that provide a basis for proving the facts of his Complaint, and as such the plaintiff complaint should not be dismissed or dismissed with prejudice.

## CONCLUSION

The allegations set forth in John Doe's complaint give the defendants fair notice of what the plaintiff's claims are and the grounds upon which they rests. That is all that is required in Notice Pleading. The defenses of Statute of Frauds do not apply because the plaintiff fully performed his contractual obligations; there is a question if the defendants partially performed their contractual obligations; and if Louis Wolf promised John Doe lifetime employment. The defenses of Statute

22

of Limitations do not apply because John Doe filed his complaint prior to the three-year limit.   For all of the reasons stated above the defendants' motion to dismiss John Doe's Complaint should be denied.

    Dated: November 28, 2006

               Respectfully submitted,


               John M. Green, (#476592)
               GILMAN & ASSOCIATES
               600 Pennsylvania Ave, SE, Suite 410
               Washington, D.C. 20003
               (202) 547-9080

               Attorney for Plaintiff